**Stephen Michael RIDDER, Plaintiff–Appellant,**

v.

**CITY OF SPRINGFIELD, Defendant–Appellee,**

**Clark County, et al., Defendants.**

No. 95–4220.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 27, 1996.

Decided March 14, 1997.

Dwight D. Brannon (argued and briefed), Dayton, OH, for plaintiff–appellant.

Robin B. DeBell (argued and briefed), Office of the City Law Director, Springfield, OH, for defendant–appellee.

Before: SUHRHEINRICH and MOORE, Circuit Judges; McKINLEY, District Judge.*

MOORE, Circuit Judge.

In this appeal we are asked to determine the propriety of sanctions under FED.R.CIV.P. 11, as amended in 1993, when a motion for sanctions is filed without satisfying the requisite "safe harbor" period and after a court has entered summary judgment. Following a protracted civil rights litigation resulting in summary judgment for defendants on all claims, Defendant City of Springfield moved for sanctions against Plaintiff Stephen M. Ridder's counsel, Dwight D. Brannon, pursu-

ant to Rule 11 and 28 U.S.C. § 1927, without first serving the motion on plaintiff's counsel for a "safe harbor" period as instructed by the 1993 Amendments to Rule 11. Agreeing with Springfield's contention that over the five-year litigation period Ridder had failed to put forth any evidence of a proper basis for municipal liability, the magistrate judge imposed sanctions in the form of a $32,546.02 fine against Ridder's counsel. As explained below, we disallow the Rule 11 sanctions because Springfield failed to comply with the rule's explicit procedural prerequisite. Springfield is entitled to $32,546.02 in attorney fees,[1] however, under § 1927 insofar as Ridder's counsel unreasonably and vexatiously multiplied the proceedings. Therefore, we affirm the magistrate judge's order awarding fees.

## I. BACKGROUND

In January 1990, Stephen M. Ridder commenced an action under 42 U.S.C. § 1983 against the City of Springfield, Ohio, and other defendants as a result of his arrest and pre-trial incarceration for a number of rape and related charges. Compl.; J.A. at 34. Ridder essentially alleged that the actions of Springfield police officers in withholding from a search warrant affidavit inconsistent information given by various rape victims and in failing to investigate fully Ridder's alibis deprived Ridder of his constitutional right to due process of law. *See* Third Amend.Compl. at 16–38; J.A. at 183–205.

The events that formed the basis of Ridder's suit stemmed from a series of rapes that occurred in and around Springfield between January 1986 and July 1988. In July 1988, Ridder's hand was nearly severed in an industrial accident. While physicians reat-

---

* The Honorable Joseph H. McKinley, Jr., United States District Judge for the Western District of Kentucky, sitting by designation.

1. We appreciate the effort to resolve for the circuit the stylistic dilemma of whether to use "attorney fees," "attorneys fees," "attorney's fees," or "attorneys' fees" found in footnote one of *Stallworth v. Greater Cleveland Reg'l Transit Auth.*, 105 F.3d 252 (6th Cir.1997). Whereas the statute at issue in *Stallworth*, 28 U.S.C. § 1447(c), uses "attorney fees," the statute we interpret, 28 U.S.C. § 1927, uses "attorneys'

fees," while the text of Rule 11 employs both "attorney's fees" and "attorneys' fees" in various subsections. As our sources are divided, we have surveyed the landscape and conclude that "attorney fees" is an acceptable form, analogous to "counsel fees" or "expert witness fees." *See* BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 91 (2d ed. 1995) (recognizing that "attorney fees," though inelegant, is increasingly common). Finding uniform terminology advantageous, we shall adhere to *Stallworth*'s use of "attorney fees."

tached his hand, a hospital employee identified Ridder's voice as that of her attacker. Police began investigating Ridder. He could be placed in the general location at the time of several of the rapes, and five of eight victims identified him in a lineup. Pursuant to a fourteen-count indictment, Springfield police officers arrested Ridder on September 8, 1988. He was detained in the Clark County Jail from then until January 4, 1989, when DNA tests exonerated him. Ridder was released from jail on January 4, 1989, and all charges against him were later dropped.

On January 4, 1990, Ridder filed a complaint against the City of Springfield, Clark County, Prosecutor Stephen A. Schumaker, Clark County Sheriff Gene A. Kelly, Springfield Chief of Police Roger Evans, Sergeant Robert Marcum, Detectives Ronald Mendah and Robert Kerr, and Dr. Walter Lawrence alleging several causes of action pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985, and state law. Compl.; J.A. at 34. The assigned magistrate judge, Michael R. Merz, noted several pleading deficiencies as to who was being sued for what and gave Ridder an opportunity to amend the complaint. Decision, Sept. 10, 1990; J.A. No. 95–3358 at 412–15. On October 1, 1990, Ridder filed an amended complaint. First Amend.Compl.; J.A. at 56. The magistrate judge subsequently dismissed most claims in the amended complaint as failing to state a claim upon which relief could be granted or as barred by qualified immunity. Decision, Mar. 4, 1992; J.A. No. 95–3358 at 455.

Ridder then obtained leave to file a second amended complaint, which he filed on May 11, 1992. Second Amend.Compl.; J.A. at 105. With respect to this complaint, the magistrate judge granted a defense motion for a more definite statement, noting that "still the Court is faced with a pleading that is not explicit about who is being sued for what." Order, June 10, 1992; J.A. No. 95–3358 at 481. The magistrate judge also decided sua sponte that the filing of the second amended complaint constituted a violation of 28 U.S.C. § 1927 in that it multiplied proceedings vexatiously and unreasonably. Or-

der, June 10, 1992; J.A. No. 95–3358 at 481–82. This § 1927 ruling, however, never became final as the magistrate judge granted Ridder leave to file a third amended complaint. See Order, Aug. 17, 1993; J.A. No. 95–3358 at 650–52.

Ridder filed his third amended complaint on August 17, 1993. Third Amend.Compl.; J.A. at 168. In the intervening period, the Supreme Court in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), held that a civil rights complaint alleging municipal liability cannot be subject to a heightened pleading standard. Recognizing *Leatherman*'s effect on Ridder's municipal liability claims, the magistrate judge deemed the third amended complaint sufficient for Ridder's case to progress beyond the pleading stage. Decision, Jan. 24, 1994; J.A. No. 95–3358 at 348.

Proceeding on the basis of the third amended complaint, the parties undertook discovery throughout 1994. Near the end of that year, Springfield moved for summary judgment. Motion; J.A. at 422. Even assuming that the Springfield police officers deprived Ridder of a constitutional right, the magistrate judge found that Ridder offered no evidence that the officers acted pursuant to any policy, custom, or usage of the City of Springfield, as required by *Monell v. Department of Social Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Decision, Feb. 28, 1995; J.A. at 358. Ridder admitted in interrogatories that he was not relying on any written policy, and the magistrate judge found no evidence that the officers' conduct toward Ridder was pursuant to a pattern, much less amounted to a policy, custom, or usage. *Id.* Accordingly, the magistrate judge dismissed the § 1983 claims against Springfield, as well as all other claims against the City and other defendants. Decision, Feb. 28, 1995; J.A. at 365–67.[2]

On March 28, 1995, one month after the magistrate judge entered judgment in favor of the City, Springfield moved for attorney fees and/or sanctions pursuant to 42 U.S.C.

---

2. In a related appeal on the merits, 1997 WL 117024 this panel in an unpublished decision affirmed the magistrate judge's entry of summary judgment in favor of all defendants.

§ 1988,[3] 28 U.S.C. § 1927, and Rule 11. Motion; J.A. at 568. Early in the case Springfield had determined that separate counsel would be retained to defend the individual police officers, thereby avoiding conflict inherent in having one attorney represent both the officers and the City. Accordingly, Springfield sought reimbursement for the fees earned by the retained counsel and not for the time and effort of the Law Director for the City of Springfield, who represented the City's interests throughout Ridder's suit. Motion at 3; J.A. at 570.

Springfield urged that Ridder's counsel should be sanctioned under Rule 11 for "failing to reasonably investigate, pre-filing, claims made against Defendant City, and for continuing in their claims long after it became, or should have become, clear that there was no factual or legal basis for municipal liability." Motion at 5–6; J.A. at 572–73. Springfield acknowledged the "safe harbor" provision of amended Rule 11 which instructs that a motion should be served on offending counsel twenty-one days prior to any filing with the court, yet the City admitted that it did not serve such a motion on Ridder's counsel. Motion at 10; J.A. at 577. Finally, Springfield insisted that by pursuing the case over five years, Ridder's counsel unreasonably and vexatiously multiplied the litigation within the meaning of 28 U.S.C. § 1927. Ridder unsuccessfully moved the magistrate judge to stay decision on Springfield's motion for sanctions pending appeal to this court of the underlying civil rights action.[4]

On October 11, 1995, the magistrate judge [5] ordered Ridder's counsel, Dwight D. Brannon, to pay the City of Springfield $32,-546.02 pursuant to Rule 11 and 28 U.S.C. § 1927.[6] Decision, Oct. 11, 1995 at 7; J.A. at 619. According to the magistrate judge, Ridder's counsel asserted frivolous claims against Springfield at the outset of the case, and continued to maintain the claims without ever developing evidentiary support. *Id.* As to Rule 11's "safe harbor" provision, the magistrate judge reasoned:

> The purpose of this requirement in the Rule is to allow a party threatened with sanctions to withdraw an offending paper, thereby avoiding the need to litigate the Rule 11 questions. Here the Motion is directed to Plaintiff's counsel's conduct in maintaining the case at all and keeping the City of Springfield in the case from the beginning through summary judgment. Plaintiff has vigorously defended against motions to dismiss and certainly did not withdraw his claims against the City of Springfield when confronted with their motion for summary judgment. Serving Plaintiff's counsel with the Rule 11 Motion 21 days before filing it would have been in this case an *empty formality*. In any event, the requirement does not appear to be jurisdictional; amended Rule 11 does not forbid the award of sanctions when this particular requirement is not met.

Decision, Oct. 11, 1995 at 5; J.A. at 617 (emphasis added). Thus, according to the magistrate judge, the failure of Springfield to comport with Rule 11's "safe harbor" provision was essentially harmless.

3. The magistrate judge found Springfield's § 1988 claim untimely and Springfield did not appeal that ruling. Decision, Oct. 11, 1995; J.A. at 613.

4. Ridder argues that the magistrate judge erred by refusing to grant his request for a stay. As we see it, the denial of the stay enabled the appeal of the sanctions award to be consolidated with the appeal on the merits, without prejudicing either party. Thus, in the present case concurrent consideration of challenges to the merits and the imposition of sanctions avoided piecemeal appeals and laudably conserved judicial resources. *See White v. New Hampshire Dept. of Employment Sec.*, 455 U.S. 445, 454, 102 S.Ct. 1162, 1167–68, 71 L.Ed.2d 325 (1982) (recognizing that prompt decision of an attorney fees claim by district court generally can avoid piecemeal appeals and permit consolidation of appeals). The magistrate judge's denial of the stay was a proper exercise of his discretion.

5. Although awarding sanctions is a dispositive matter on which a magistrate judge ordinarily makes only a recommendation, *see Bennett v. General Caster Serv. of N. Gordon Co.*, 976 F.2d 995 (6th Cir.1992), in this case the parties consented to plenary magistrate jurisdiction under 28 U.S.C. § 636(c). *See* Consent to Civil Jurisdiction of U.S. Magistrate; R. 37.

6. Ridder does not challenge the amount of the sanction.

## II. RULE 11 SANCTIONS

### A. Standard of Review

In this circuit the test for imposition of Rule 11 sanctions is whether the attorney's conduct was reasonable under the circumstances. *Mann v. G & G Mfg., Inc.,* 900 F.2d 953, 958 (6th Cir.), *cert. denied,* 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990). We review all aspects of a court's Rule 11 determination for abuse of discretion. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990); FED.R.CIV.P. 11 Advisory Committee Notes (1993 Amendments). A court necessarily abuses its discretion if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence. *Cooter & Gell,* 496 U.S. at 405, 110 S.Ct. at 2460–61.

### B. The 1993 Amendments to Rule 11

Originally enacted in 1937 but rarely utilized for over four decades, Rule 11 became a popular tool for regulating attorney behavior following the rule's major overhaul in 1983. The 1983 version of Rule 11 mandated sanctions when an attorney failed to satisfy an objective standard of reasonable pre-filing inquiry into the facts or law underlying a claim. The 1983 amendment was designed to reduce a perceived reluctance of courts to impose sanctions, thereby discouraging dilatory and abusive litigation tactics and streamlining the litigation process. FED. R.CIV.P. 11 Advisory Committee Notes (1983 Amendment). The application of the 1983 version of Rule 11 provoked considerable commentary and was criticized for spawning satellite litigation, abusing the rule's potential as a fee-shifting device, exacerbating incivility among lawyers and between bench and bar, chilling creative advocacy, and disproportionately impacting plaintiffs over defendants, particularly in the civil rights arena. *See, e.g.,* Letter from Hon. Sam C. Pointer, Jr., Chairman of the Advisory Committee on Civil Rules, to Hon. Robert E. Keeton, Chairman of the Standing Committee on Rules of Practice and Procedure (May 1, 1992), *reprinted in* 146 F.R.D. 519, 523; William W. Schwarzer, *Rule 11: Entering a New Era,* 28 LOY.L.A.L.REV. 7, 9–12 (1994).

Responding to these concerns, Rule 11 was substantially revised in 1993. The new language broadens the scope of attorney obligations but places greater constraints on the imposition of sanctions. Under the amended rule:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

FED.R.CIV.P. 11(b). Insofar as the amended rule liberalizes certification standards for factual allegations by validating a potential need for discovery, it reciprocates by embracing a continuing duty of candor: "[I]f evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention." FED. R.CIV.P. 11 Advisory Committee Notes (1993 Amendments). Thus, litigants may be sanctioned under the amended rule for continuing to insist upon a position that is no longer tenable.

In a significant turnabout, the amended rule now makes the imposition of sanctions for violations discretionary, rather than man-

datory. *See* FED.R.CIV.P. 11(c). In line with Rule 11's ultimate goal of deterrence, rather than compensation, the amended rule also de-emphasizes monetary sanctions and discourages direct payouts to the opposing party. FED.R.CIV.P. 11 Advisory Committee Notes (1993 Amendments).

### C. "Safe Harbor" Provision

■ The 1993 amendments prescribe specific procedural requirements for the imposition of Rule 11 sanctions, a conspicuous change from the former version. "A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate [Rule 11(b) ]." FED.R.CIV.P. 11(c)(1)(A).[7] In accord with the amended rule, a party seeking sanctions must follow a two-step process: first, serve the Rule 11 motion on the opposing party for a designated period (at least twenty-one days); and then file the motion with the court. Critical new language directs that the motion for sanctions:

> [S]hall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

*Id.* In the Advisory Committee Notes, the drafters correspondingly state:

> These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a speci-

fied allegation. . . . [T]he timely withdrawal of a contention will protect a party against a motion for sanctions.

FED.R.CIV.P. 11 Advisory Committee Notes (1993 Amendments). Thus, the 1993 amendments allow for a twenty-one day period of "safe harbor," whereby the offending party can avoid sanctions altogether by withdrawing or correcting the challenged document or position after receiving notice of the allegedly violative conduct. In that way, the "safe harbor" provision works in conjunction with the duty of candor, giving the proponent of a questionable claim an opportunity to assess the claim's validity without immediate repercussion.

The inclusion of a "safe harbor" provision is expected to reduce Rule 11's volume, formalize appropriate due process considerations of sanctions litigation, and diminish the rule's chilling effect. *See Photocircuits Corp. v. Marathon Agents, Inc.,* 162 F.R.D. 449, 452 (E.D.N.Y.1995); Carl Tobias, *The 1993 Revision to Federal Rule 11,* 70 IND.L.J. 171, 207 (1994). By providing immunity from sanctions through self-regulation, the "safe harbor" period also serves the streamlining purpose that the 1983 architects of Rule 11 originally envisioned. *See* Georgene M. Vairo, *The New Rule 11: Past as Prologue?,* 28 LOY.L.A.L.REV. 39, 64 (1994). Undoubtedly, the drafters also anticipated that civility among attorneys and between bench and bar would be furthered by having attorneys communicate with each other with an eye toward potentially resolving their differences prior to court involvement. *See* Schwarzer, *supra* at 20–21.

On the other hand, the creation of a "safe harbor" period minimizes the risks of engaging in inappropriate litigation tactics. Justice Scalia, dissenting from the Supreme

---

**7.** Ridder argues that Springfield's motion for sanctions was not "separate" because Springfield moved for sanctions and/or attorney fees pursuant to Rule 11, 42 U.S.C. § 1988, and 28 U.S.C. § 1927. We believe Springfield has filed a "separate" motion for sanctions under the meaning of the rule. The drafters instruct that a "separate" motion is one that is "not simply included as an additional prayer for relief contained in another motion." FED.R.CIV.P. 11 Advisory Committee Notes (1993 Amendments). As we understand it, this requirement is intended to highlight the sanctions request by preventing it from being tacked onto or buried in motions on the merits, such as motions to dismiss or for summary judgment. The requirement does not foreclose combining a Rule 11 request with other provisions regulating attorney behavior, such as § 1988 and § 1927. To require Springfield to request Rule 11 sanctions separate from other requests for attorney fees based on the same conduct would amount to needless duplication of paper, time, and effort, for practitioners as well as the courts.

Court's adoption of the 1993 amendments to Rule 11, noted as much, believing the revisions render Rule 11 "toothless," in part because the "safe harbor" provision allows for an offending attorney to "escape with no sanction at all.... Under the revised Rule, parties will be able to file thoughtless, reckless, and harassing pleadings, secure in the knowledge that they have nothing to lose." Amendments to the Federal Rules of Civil Procedure, Dissenting Statement of Justice Scalia, 146 F.R.D. 507–08 (1993). The "safe harbor" provision has also been criticized as increasing litigation costs by forcing litigants to review, research, and reconsider any pleading that the other party believes may be sanctionable. However, the burden imposed by the new procedure does not appear to be significantly more onerous than that imposed by the prior rule or "the dictates of good professional practice." *See* 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, CIVIL 2D. § 1332 (Supp. 1996).

### D.  Timing of Rule 11 Motion

The now-discarded 1983 version of Rule 11 designated no particular time for filing a Rule 11 motion. Rather, the Advisory Committee Notes under the 1983 amendment contemplated that, although the court had discretion with respect to when sanctions could be imposed, Rule 11 issues stemming from the pleadings "normally [would] be determined at the end of the litigation." FED. R.CIV.P. 11 Advisory Committee Notes (1983 Amendment). It became settled law, before the 1993 amendments took effect, that a Rule 11 motion could be made after final judgment, subject to local rules establishing timeliness standards. *See Cooter & Gell*, 496 U.S. at 396, 110 S.Ct. at 2456 (stating that Rule 11 determination may be made after the principal suit has been terminated; upholding sanctions awarded three and a half years after voluntary dismissal); *Runfola & Assoc., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 372 (6th Cir.1996) (holding that district court did not err in finding timely a motion for sanctions filed one month after summary judgment). This is no longer the case.

■ Although the text of the amended rule fails to specify when a Rule 11 motion should be brought, the drafters advise early action:

> The revision leaves for resolution on a case-by-case basis, considering the particular circumstances involved, the question as to when a motion for violation of Rule 11 should be served and when, if filed, it should be decided. Ordinarily the motion should be served *promptly after the inappropriate paper is filed,* and, if delayed too long, may be viewed as untimely. In other circumstances, it should not be served until the other party has had a reasonable opportunity for discovery. Given the "safe harbor" provisions ... *a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention).*

FED.R.CIV.P. 11 Advisory Committee Notes (1993 Amendments) (emphases added). Thus, the 1993 amendments work a significant change in the timing of a Rule 11 motion. By virtue of the fact that under the 1993 amendments, "a Rule 11 motion cannot be made unless there is some paper, claim, or contention that can be withdrawn," Vairo, *supra* at 65, it follows that a party cannot wait to seek sanctions until after the contention has been judicially disposed. A party must now serve a Rule 11 motion on the allegedly offending party at least twenty-one days prior to conclusion of the case or judicial rejection of the offending contention. If the court disposes of the offending contention before the twenty-one day "safe harbor" period expires, a motion for sanctions cannot be filed with or presented to the court. Any other interpretation would defeat the rule's explicit requirements. Once a motion is properly filed with the court, the drafters prudently permit the court to defer ruling on the sanctions motion until after the final resolution of the case. *See* FED.R.CIV.P. 11 Advisory Committee Notes (1993 Amendments).

### E. Application of 1993 Amendments to Springfield's Motion

As a threshold consideration, we must determine whether the magistrate judge erred by applying the 1993 amendments to Spring-

field's motion for sanctions. By order of the Supreme Court, the 1993 amendments to the Federal Rules of Civil Procedure, including revisions of Rule 11, took effect on December 1, 1993, governing "all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings in civil cases then pending." Order of the United States Supreme Court Adopting and Amending the Federal Rules of Civil Procedure, 146 F.R.D. 404 (1993).

■ Ridder commenced this action well before December 1, 1993. Springfield moved for sanctions on March 28, 1995, over a year after the effective date of the amendments. Although the sanctionable conduct stemmed from four complaints filed prior to the revision's effective date, Ridder's counsel continued to assert the frivolous claims beyond that date. Moreover, there has been no suggestion that applying the amended rule in this case was somehow infeasible. Springfield was admittedly aware of the amended version of Rule 11, for the City expressly referred to the amendments in its motion for sanctions, thereby providing notice to Ridder's counsel that Rule 11 had been amended. Therefore, taking into consideration the elapsed time, the parties' awareness of the amendments, and the feasibility of applying the amended rule in the instant case, we agree with the magistrate judge that it was both just and practicable to apply Rule 11 as amended in 1993 to Springfield's motion for sanctions.

### F.  Springfield's Motion for Rule 11 Sanctions

There is no question that Springfield failed to comply with the "safe harbor" procedural prerequisite of the amended rule. Springfield admits that it did not serve the motion for sanctions on Ridder's counsel prior to filing the motion with the court:

> Finally, counsel for Defendant City is not unaware of the amendment of Rule 11 effective December 1, 1993, particularly insofar as paragraph (c)(1)(A) now sets forth a procedure for service of a motion upon the offending counsel prior to filing with the Court, and the twenty-one (21) day "safe harbor" provision that is also now in Rule 11. Further, the *Defendant City has not served such a motion upon Plaintiff's counsel in this case.*

Motion at 10; J.A. at 577 (emphasis added). Notwithstanding this admission, Springfield insists that complying with the "safe harbor" provision would have been a "vain act," for Ridder's counsel "clearly evidenced a willingness to persist in meritless claims." Motion at 11; J.A. at 578.

■ Rule 11 cases emerging in the wake of the 1993 amendments have found the "safe harbor" provision to be an absolute requirement. *See Elliott v. Tilton,* 64 F.3d 213, 216 (5th Cir.1995) (recognizing that the plain language of the rule indicates that the "safe harbor" provision is mandatory); *Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1328 (2d Cir.1995) (reversing sanctions award in part because no evidence indicated compliance with "safe harbor" period that current version of Rule 11 specifically mandates); *Thomas v. Treasury Management Ass'n,* 158 F.R.D. 364, 369 (D.Md.1994) (finding that failure to comply with "safe harbor" absolute prerequisite precludes sanctions); *United Food and Commercial Workers Union Local No. 576 v. Four B Corp.,* 893 F.Supp. 980, 987 (D.Kan.1995) (stating that Rule 11 "prohibits" the filing of a motion until twenty-one days after the "safe harbor" service), *aff'd,* 83 F.3d 433 (10th Cir.1996). We agree that the rule is unquestionably explicit with respect to this issue. The plain language of Rule 11 specifies that unless a movant has complied with the twenty-one day "safe harbor" service, the motion for sanctions "shall not be filed with or presented to the court." FED. R.CIV.P. 11(c)(1)(A). Springfield did not comply with the "safe harbor" procedural prerequisite; therefore, the City's Rule 11 motion should not have been presented to the court.

Nonetheless, the magistrate judge found and Springfield argues that the "safe harbor" provision is rendered a mere "empty formality" when a motion for sanctions comes after summary judgment has been granted. We fully agree with that observation. By virtue of its nature, the "safe harbor" provision cannot have any effect if the court has already rendered its judgment in the case; it

is too late for the offending party to withdraw the challenged claim. Given the futility of the "safe harbor" provision in this context, Springfield deduces that compliance is unnecessary. This is where we depart from Springfield's logic. Rather than excusing Springfield's noncompliance, we instead hold that Springfield has given up the opportunity to receive an award of Rule 11 sanctions in this case by waiting to file the motion until after the entry of summary judgment. As stated above, a motion for sanctions under Rule 11 must be served on the offending party for a period of "safe harbor" at least twenty-one days prior to the entry of final judgment or judicial rejection of the offending contention. A party seeking sanctions must leave sufficient opportunity for the opposing party to choose whether to withdraw or cure the offense voluntarily before the court disposes of the challenged contention.

Pragmatic realities require such strict adherence to the rule's outlined procedure. By delaying the motion until after summary judgment was granted, Springfield deprived Ridder's counsel of the "safe harbor" to which the rule says he is entitled. Had Ridder's counsel been allotted his "safe harbor" service, he could have avoided sanction by withdrawing the claims against Springfield. That is the very essence of a "safe harbor." Instead, Ridder's counsel was unable to choose for himself whether to continue asserting claims against the City when faced with a potential payout from his own pocket. Neither the opposing party nor the magistrate judge should, with hindsight, step into the attorney's shoes to speculate as to whether the prospect of a fine or other sanctions would have sufficiently motivated the attorney to withdraw the offense. Moreover, had the twenty-one day "safe harbor" period been provided, and Ridder withdrawn his claims, the magistrate judge would have been spared the need to rule on the City's summary judgment motion.

In sum, adhering to the rule's explicit language and overall structure, we hold that

sanctions under Rule 11 are unavailable unless the motion for sanctions is served on the opposing party for the full twenty-one day "safe harbor" period before it is filed with or presented to the court; this service and filing must occur prior to final judgment or judicial rejection of the offending contention. Quite clearly then, a party cannot wait until after summary judgment to move for sanctions under Rule 11.[8]

By filing a motion for sanctions without previously having served the motion on the opposing party for the designated period and by waiting until summary judgment had been entered, Springfield failed to afford Ridder's counsel the twenty-one day "safe harbor" period mandated by the 1993 revised rule. We conclude that the magistrate judge's decision to impose Rule 11 sanctions in this case was based upon an erroneous view of the rule and thus amounted to an abuse of the magistrate judge's discretion. For this reason, we vacate the imposition of sanctions under Rule 11.

### III. COUNSEL'S LIABILITY UNDER 28 U.S.C. § 1927

■ The unavailability of Rule 11 sanctions in the present case does not rule out the possibility that attorney fees were properly assessed against Ridder's counsel pursuant to 28 U.S.C. § 1927. Unlike Rule 11 sanctions, a motion for excess costs and attorney fees under § 1927 is not predicated upon a "safe harbor" period, nor is the motion untimely if made after the final judgment in a case. See In re Ruben, 825 F.2d 977, 981–82 (6th Cir.1987) (finding motion for § 1927 fees filed four months after district judge's entry of judgment and two weeks after dismissal of the appeal timely under "reasonableness" test), cert. denied sub nom. Swan v. Ruben, 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988). Therefore, this avenue for upholding the fee award against Ridder remains viable.

---

**8.** Our construction of Rule 11's "safe harbor" provision does not in any way preclude the ability of a district or magistrate judge, on his or her own initiative, to enter an order describing the offending conduct and directing the offending

attorney to show cause why Rule 11 has not been violated. See FED.R.CIV.P. 11(c)(1)(B). There is no corresponding "safe harbor" period for court-initiated sanctions.

Having found sanctions appropriate under Rule 11, the magistrate judge concluded that he:

> [N]eed not analyze the 28 U.S.C. § 1927 authority as well except to state that it also supports the same award since the conduct of counsel being sanctioned is pleading the policy claim against Springfield in the beginning and then failing to develop any evidence in support of it. The excess costs incurred by Springfield and recoverable under § 1927 against Mr. Brannon are the same amount to be awarded under Rule 11.

Decision, Oct. 11, 1995 at 7; J.A. at 619. Thus, the magistrate judge did enter a finding that the $32,546.02 fee award was also justified under § 1927, although his explanation leaves little for us to review. In the interest of preventing further delay in this already protracted litigation, we will determine whether a § 1927 fine against Ridder's counsel was warranted. As with Rule 11 sanctions, we review an order awarding attorney fees under § 1927 for abuse of discretion. *Ruben,* 825 F.2d at 984.

Section 1927 provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

Initially, this circuit understood the statute as punishing "an intentional departure from proper conduct, or, at a minimum, . . . a reckless disregard of the duty owed by counsel to the court." *United States v. Ross,* 535 F.2d 346, 349 (6th Cir.1976). After Congress amended the statutory language in 1980, we dispensed with the subjective standard, holding that § 1927 "authorizes a court to assess fees against an attorney for 'unreasonable and vexatious' multiplication of litigation despite the absence of any conscious impropriety." *Jones v. Continental Corp.,* 789 F.2d 1225, 1230 (6th Cir.1986). Fees may be assessed without a finding of bad faith, "at least when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Id.*

The objective standard enunciated in *Jones* remains sound in this circuit, but we have since reinforced that:

> [S]imple inadvertence or negligence that frustrates the trial judge will not support a sanction under section 1927. There must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.

*Ruben,* 825 F.2d at 984; *see also Holmes v. City of Massillon,* 78 F.3d 1041, 1049 (6th Cir.) (same), *cert. denied sub nom. Fabianich v. Holmes,* —— U.S. ——, 117 S.Ct. 312, 136 L.Ed.2d 228 (1996). Under this formulation, the mere finding that an attorney failed to undertake a reasonable inquiry into the basis for a claim does not automatically imply that the proceedings were intentionally or unreasonably multiplied. *See Orlett v. Cincinnati Microwave, Inc.,* 954 F.2d 414, 419 (6th Cir.1992).

We believe that Ridder's counsel, Mr. Brannon, should be liable for excess costs resulting from his initial filing and persistent assertion of meritless claims, conduct that amounted to unreasonable and vexatious multiplication of the proceedings. Mr. Brannon brought suit against the City of Springfield and individual Springfield police officers without any evidence to support a basis for municipal liability, and he persisted in pressing the allegations for over five years, despite unearthing no evidentiary support for the claims even after full discovery. Thus, Mr. Brannon pursued the case against Springfield long after it should have become clear that the claims lacked any plausible factual basis. *See Jones,* 789 F.2d at 1230 (citing with approval a Seventh Circuit case affirming § 1927 sanctions where "an attorney, though not guilty of conscious impropriety, 'intentionally . . . [pursues] a claim that lacks plausible legal or factual basis.' ") (quoting *Knorr Brake Corp. v. Harbil, Inc.,* 738 F.2d 223, 226–27 (7th Cir.1984)) (alteration in *Jones* ). Under the circumstances,

Mr. Brannon's conduct fell short of the obligations owed by a member of the bar and caused considerable expense to the City of Springfield.

An attorney is liable under § 1927 solely for excessive costs resulting from the violative conduct. Mr. Brannon's failure to withdraw the claims against Springfield and the individual police officers forced the City to defend this action for a period in excess of five years. Since we agree with the magistrate judge that Mr. Brannon's unreasonable and vexatious behavior began with the filing of the complaint and persisted throughout the pendency of the case, the magistrate judge did not abuse his discretion by awarding the full amount of attorney fees incurred by counsel separately retained by Springfield to defend the case against the individual officers, *see infra* Part I. Of the many obstacles encountered during the "procedural odyssey" that became this case, *see* Appellant's Br. No. 95–3358 at 2, we believe many, if not most, are directly attributable to inadequate advocacy by plaintiff's counsel. *See Ridder v. Springfield,* 1997 WL 117024 (6th Cir.1997).

We remain sensitive that "[a]n award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct." *Jones,* 789 F.2d at 1232. It is a function of the intrinsic nature of civil rights actions that on occasion plaintiffs may not possess full evidentiary support at the onset. However, a civil rights plaintiff does not have free rein to bring and pursue frivolous claims. Here, Mr. Brannon should have diligently withdrawn the claims against the City upon realizing that he was unable to amass any evidentiary support after five years and full discovery. Moreover, the magistrate judge delivered a poignant warning to Mr. Brannon that he had crossed the line into "unreasonable and vexatious multiplication of proceedings" by imposing § 1927 liability for the filing of the second amended complaint, only to rescind that award in response to Mr. Brannon's request for leave yet again to amend the complaint. Surely, at that point, Mr. Brannon should have proceeded cautiously when asserting the same claims in the third amended complaint. Thereafter, however, Mr. Brannon continued asserting the same frivolous claims up to and including plaintiff's motion in opposition to summary judgment, all the while revealing no plausible factual basis for municipal liability.

## IV. CONCLUSION

Pursuant to the "safe harbor" provision of the 1993 amendments to Rule 11, a motion for Rule 11 sanctions must be served on the opposing party at least twenty-one days before it is filed with or presented to the court; this "safe harbor" service and delayed filing must be completed prior to final judgment or judicial rejection of the offending contention. Because Springfield did not comply with the twenty-one day "safe harbor" procedural prerequisite before filing its motion for Rule 11 sanctions, the award of sanctions under Rule 11 was improper. Therefore, of the two alternate bases for imposing a fee award against Ridder's counsel in this case, the order of the magistrate judge is **VACATED** to the extent that it imposed Rule 11 sanctions, but **AFFIRMED** insofar as it awarded attorney fees to Springfield pursuant to 28 U.S.C. § 1927.