115 F.3d 378
 37 Fed.R.Serv.3d 1235
 UNION PLANTERS BANK, formerly known as Sunburst Bank,
Plaintiff-Appellee,
v.
L & J DEVELOPMENT COMPANY, INC., Defendant,
John W. Jemison and Lynn Jemison (95-5624), Defendants-Appellants,
Laurence D. Conn, Intervening Defendant,
William M. Gotten (95-5623), Attorney-Appellant.
 Nos. 95-5623, 95-5624.
 United States Court of Appeals,
Sixth Circuit.
 Argued (95-5624) March 21, 1997.
Submitted (95-5623) March 21, 1997.
Decided May 30, 1997.
Rehearing Denied July 11, 1997.
 
 ARGUED: Edward A. Moss, Holcomb Dunbar, Oxford, MS, for Appellee. John B. Gillis, Luckett Law Firm, Clarksdale, MS, for Appellant. ON BRIEF: Nancy M. Maddox, Holcomb Dunbar, Oxford, MS, for Appellee. John B. Gillis, Luckett Law Firm, Clarksdale, MS, for Appellant in 95-5624. William M. Gotten, Memphis, TN, for Appellant in 95-5623.
 Before: LIVELY, NELSON, and MOORE, Circuit Judges.
 OPINION
 MOORE, Circuit Judge.
 
 
 1
 Sunburst Bank brought an action against L & J Development Company and John and Lynn Jemison seeking to recover on a promissory note. The case was tried by United States District Judge Jerome Turner, who found for Sunburst. Soon thereafter, Sunburst was acquired by Union Planters Bank, a banking institution with whom the judge had economic relations. Subsequent to the merger, Judge Turner awarded $50,000 in sanctions under Rule 11 of the Federal Rules of Civil Procedure against the Jemisons and their attorneys, payable to Sunburst, and the next day recused himself from one claim that remained to be tried. The Jemisons and one of their attorneys now appeal the sanctions order and assert that Judge Turner should have recused himself from hearing the sanctions motion. For the reasons that follow, we affirm.
 
 I. BACKGROUND
 
 2
 In 1987, Sunburst Bank, a Mississippi corporation, extended a commercial loan in the amount of $1,225,000 to L & J Development Co., Inc. ("L & J"), a Tennessee corporation. John W. Jemison of Houston, Texas, acting as the president of L & J, executed a promissory note in the same amount, secured by a deed of trust encumbering certain rental property owned by L & J, assignments of rents and a life insurance policy, and a personal guaranty from Jemison and his wife, Lynn. L & J defaulted.
 
 
 3
 In 1993, Sunburst filed suit against L & J and the Jemisons in the Chancery Court of Shelby County, Tennessee, seeking to recover on the note and the guaranty. The suit was removed to the U.S. District Court for the Western District of Tennessee where it was assigned to Judge Jerome Turner. L & J and the Jemisons answered and counterclaimed, claiming, inter alia, that the trust deed had been materially altered by Sunburst. J.A. at 24-28. Their attorney, Larry K. Scroggs, signed the pleading. In addition to their counterclaim, L & J and the Jemisons filed suit in Texas against Sunburst for material alteration of a trust deed. The Texas case was later transferred to the Western District of Tennessee, assigned case number 93-3075, and consolidated with the pending Sunburst suit, case number 93-2371.
 
 
 4
 L & J thereafter petitioned for Chapter 11 bankruptcy relief in the U.S. Bankruptcy Court for the Southern District of Texas. The bankruptcy case was transferred to the U.S. Bankruptcy Court for the Western District of Tennessee. L & J retained William M. Gotten, its bankruptcy counsel, to represent the company's interests in the consolidated Tennessee litigation. J.A. at 35. Scroggs continued representing the Jemisons.
 
 
 5
 In July 1994, Union Planters Bank publicly announced that it was planning to acquire Sunburst. Following the announcement, L & J and the Jemisons filed a "Suggestion of Possible Conflict," noting that Judge Turner's former law firm had represented Union Planters for many years. J.A. at 39. Judge Turner convened the parties in his chambers on August 18, 1994, after which he entered an order reciting that his contacts with his former law firm presented no conflict. J.A. at 46. Regarding the judge's personal business ties with Union Planters, the order stated that "the parties have suggested to the court that they do not view the court's business relationships with Union Planters National Bank as a conflict and do not wish the court to recuse itself." Id. For this reason, and because the merger was not imminent, Judge Turner concluded that recusal was neither required nor appropriate at that time. Id.
 
 
 6
 Sunburst moved for summary judgment, claiming that L & J's own loan closing attorney, Alison Wetter, admitted in a deposition that she had probably altered the trust deed by changing $1,225,520 to $1,225,000 to reflect the actual loan amount. J.A. at 41-43, 293-298. Wetter also testified that Mr. Jemison signed the deed in her office at the closing. Mr. Jemison, however, testified that he signed only one trust deed in the amount of $1,225,520 at Sunburst Bank sometime before the closing. J.A. at 284. Finding disputed issues of fact concerning who altered the deed and whether the Jemisons executed a superseding guaranty, Judge Turner denied Sunburst's motion for summary judgment. J.A. at 76-78.
 
 
 7
 At a pretrial conference, Judge Turner severed the two cases for trial. He later changed his mind, finding that many claims were identical in both cases and thus should remain consolidated. One claim in case number 93-3075 concerning garnishment was found to be distinct and thus severed. See J.A. at 73-75.
 
 
 8
 Judge Turner conducted a bench trial on the consolidated claims in November 1994. Mr. Jemison testified at trial consistent with his prior deposition testimony. On December 2, 1994, Judge Turner found for Sunburst on all claims and defenses. J.A. at 129-51. In the court's opinion, the "overwhelming weight of the evidence" established that the Jemisons' closing attorney Wetter corrected the trust deed before Mr. Jemison signed it at her office. J.A. at 141.
 
 
 9
 On August 16, 1994, several months before trial, Sunburst served on the Jemisons a motion for sanctions which it then filed with the court on November 17, 1994. J.A. at 120-22. A hearing was held on December 21, 1994, where, although the sanctions motion was mentioned, the discussion primarily focused on Sunburst's renewed motion for summary judgment and the question of recusal from the remaining untried claim. See J.A. at 301-56. Earlier that day Sunburst had submitted six affidavits detailing legal expenses incurred by the bank in defending the Jemisons' claims. J.A. at 179-232. Union Planters's acquisition of Sunburst took effect on December 31, 1994.
 
 
 10
 On March 28, 1995, Judge Turner imposed sanctions in the amount of $45,000 against the Jemisons, and $2,500 each against attorneys Scroggs and Gotten, all payable to Sunburst. J.A. at xlv.
 
 
 11
 The next day, March 29, 1995, Judge Turner transferred the garnishment claim remaining in case number 93-3075 to another judge "[b]ecause Sunburst Bank has been acquired by Union Planters National Bank, a banking institution with whom the presiding judge currently has substantial economic relations and because the plaintiffs in this case have requested the court to recuse itself on the remaining untried issue." J.A. at 279-80. Judge Turner noted that "[t]he parties specifically declined to request recusal on [the sanctions] issue." J.A. at 280 n.1. The Jemisons and Gotten, L & J's attorney, now appeal the sanctions order.[1]
 
 II. DISCUSSION
 A. Judicial Disqualification
 
 12
 Section 455(a) of Title 28 provides that a United States judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This provision can be waived if "preceded by a full disclosure on the record of the basis for disqualification." 28 U.S.C. § 455(e). Section 455(b) designates particularized situations in which recusal is mandated, such as:
 
 
 13
 (1) Where [the judge] has a personal bias or prejudice concerning a party ... [or]
 
 
 14
 (4) [The judge] knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.
 
 
 15
 28 U.S.C. § 455(b). Disqualification arising under § 455(b) cannot be waived by the parties, 28 U.S.C. § 455(e), and the judge is under a statutory duty to "inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children." 28 U.S.C. § 455(c). "Financial interest" is defined in the statute as "ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party." 28 U.S.C. § 455(d)(4). We review a judge's decision regarding § 455 recusal for abuse of discretion. Barclays/American Business Credit, Inc. v. Adams (In re Adams), 31 F.3d 389, 396 (6th Cir.1994), cert. denied, 513 U.S. 1111, 115 S.Ct. 903, 130 L.Ed.2d 786 (1995).
 
 
 16
 At the August 18, 1994 conference concerning the Jemisons' suggestion of possible conflict, Judge Turner described his relationship with Union Planters as follows:
 
 
 17
 I don't try cases with [Union Planters] because I am indebted to them and I bank with them and there are just too many relationships.... I am a borrower of theirs and that puts them in an unusual position relative to me that not many other people have, my relationship is not what many other people have.... I don't own any stock in Union Planters, although my wife has, and I don't know whether she still does or not.
 
 
 18
 J.A. at 403, 405, 407. The judge then stated that he would find out if his wife owned any stock and that "I will advise you on that if she does." J.A. at 408. At the December 21, 1994 hearing, Judge Turner remarked:
 
 
 19
 Union Planters happens to be the bank where I do business and from time to time have loans. I don't think I have any right now. From time to time I do expect to do further business and probably will.
 
 J.A. at 336. He further explained:
 
 20
 I do not believe I have any loans at Union Planters right now. Although I'm not absolutely certain about that. I will continue doing business with them during the next year, if not in this year. I don't think I'm going to be doing anything with them other than the regular checking account and the lock box business.
 
 
 21
 J.A. at 343. Three months after the bank merger took effect, Judge Turner recused himself from adjudicating the remaining untried claim, citing his "substantial economic relations" with Union Planters. J.A. at 279.
 
 
 22
 Careful consideration of the record before us reveals that, even after the merger, Judge Turner did not possess a direct financial interest in a party to the proceeding within the meaning of § 455(b)(4), (d)(4). The evidentiary showing regarding ownership interest is simply too speculative and contingent to support a finding that the judge or his wife owned any stock in Union Planters at the relevant time period. Furthermore, we are unable to detect "any other interest" of the judge, aside from his wife's potential stock ownership, that could have been "substantially affected" by the outcome of the sanctions motion. Thus, we have no competent basis to conclude that Judge Turner possessed the requisite financial or other interest necessary to invoke automatic disqualification under § 455(b)(4).[2]
 
 
 23
 Pursuant to § 455(a), a judge must recuse himself or herself "where a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." United States v. Dandy, 998 F.2d 1344, 1349 (6th Cir.1993) (quotation omitted), cert. denied, 510 U.S. 1163, 114 S.Ct. 1188, 127 L.Ed.2d 538 (1994). This statute is designed "to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 865, 108 S.Ct. 2194, 2205, 100 L.Ed.2d 855 (1988). Accordingly, "[w]here the question is close, the judge must recuse himself." Dandy, 998 F.2d at 1349. Notwithstanding the statute's broad reach, disqualification under § 455(a) may be waived following full disclosure. 28 U.S.C. § 455(e).
 
 
 24
 Objectively, the timing of the sanctions order, coming one day prior to the judge's recusal from the remaining triable issue, creates appearance problems. That the judge self-designated his economic relationship with Union Planters as "substantial" also raises the specter of § 455(a) partiality. Thus, a detached observer might reasonably question the judge's motivations in awarding $50,000 in sanctions directly to, in essence, an entity with which he maintained "substantial" economic ties.
 
 
 25
 Putting aside for the moment the aspects of the sanctions order that appear disconcerting from an objective viewpoint, the record is clear that Judge Turner discussed his connection to Union Planters on the record with the parties soon after the public announcement of Union Planters's planned acquisition of Sunburst, months before the merger took effect. Following the trial, the judge again discussed the question of his recusal in open court with the parties. There, Judge Turner offered the Jemisons an opportunity to object to his continued handling of the case. A review of the transcript, however, reveals that the Jemisons expressly indicated that they did not expect Judge Turner to withdraw from hearing the sanctions motion; rather, they suggested only that he recuse himself from trying the remaining garnishment claim. Specifically, in response to a direct question from the judge, the Jemisons' attorney replied that his clients would prefer for the judge to recuse himself from the remaining triable issue in the Texas case, J.A. at 344, but as to the motion for sanctions, stated "[a]s I understand the thrust of the Motion of Sanctions which [sic] is essentially dealing with matters that have been heard by the Court. I'm not suggesting that the Court should recuse itself from the motion." J.A. at 345.
 
 
 26
 Moreover, at that December 21, 1994 hearing, the judge unequivocally stated his intention of ruling upon the sanctions motion. Judge Turner ended the hearing declaring: "At this point it's the Court's intent to go forward with the Motion for Sanctions.... I will decide whether to recuse myself from the Texas action, handling the Motion for Sanctions." J.A. at 352, 356. Had the Jemisons not meant to waive potential § 455(a) appearance problems for the sanctions motion, all they needed to do was to object after the court stated its intention or to alert the court to its mistaken assumption sometime between December 1994 and March 1995.
 
 
 27
 After the merger took effect on December 31, 1994, Judge Turner simply entered orders that complied with the Jemisons' explicit request--he ruled upon the sanctions motion and then recused himself from the triable claim. Even assuming that a detached observer might have questioned the judge's impartiality in deciding matters in the Sunburst action after the merger with Union Planters, the evidence shows that the Jemisons expressly waived a § 455(a) challenge with respect to the sanctions motion, preserving the recusal issue solely for the remaining triable claim from which the judge in fact disqualified himself. Thus, on the record before us, Judge Turner was under no obligation pursuant to 28 U.S.C. § 455 to recuse himself from hearing and ruling upon Sunburst's request for sanctions. Judge Turner's decision to entertain the sanctions motion but not the remaining triable claim constituted a reasonable exercise of his discretion in light of the parties' posture.
 
 B. Rule 11
 Sanctions
 
 28
 Turning to the merits of the sanctions order, the Jemisons and Gotten, L & J's attorney, challenge several aspects of the district court's application of Rule 11. In this circuit, the test for the imposition of Rule 11 sanctions remains, after the 1993 amendments, "whether the individual's conduct was reasonable under the circumstances." Lemaster v. United States, 891 F.2d 115, 118 (6th Cir.1989) (quotation omitted); see Ridder v. Springfield, 109 F.3d 288, 293 (6th Cir.1997); FED. R. CIV. P. 11(b) (requiring "inquiry reasonable under the circumstances"). On appeal, "[w]e review all aspects of a court's Rule 11 determination for abuse of discretion." Ridder, 109 F.3d at 293.
 
 
 29
 Applying Rule 11, as amended in 1993, the district court found six specific violations of the rule: (1) asserting and, in Mr. Jemison's case, testifying that Sunburst altered the deed, knowing that such assertions lacked evidentiary support; (2) pursuing the alteration defense in order to delay and gain settlement leverage; (3) asserting and, in Mr. Jemison's case, testifying that Sunburst committed wrongful conduct in connection with the Jemisons' personal guaranty, knowing that such assertions lacked evidentiary support; (4) pursuing the superseding guaranty defense in order to delay and gain settlement leverage; (5) asserting affirmative damage claims without first conducting reasonable inquiry into their evidentiary support; and (6) pursuing the damage claims after discovery and trial revealed them to be without evidentiary support. See J.A. at liv-lv (Sanctions Order at 10-11).
 
 
 30
 The district court specifically found that the Jemisons were actively at fault and "the root cause of the violations in this case"; accordingly, they received the bulk of the sanction. J.A. at lix (Sanctions Order at 15). The court noted that the litigation revolved primarily "around a $520 clerical error in a $1.2 million loan ... [that] was quickly corrected by Mr. Jemison's own closing attorney, in his favor, and with his knowledge and consent," and that "the alleged 'superseding guaranty' exists only in Mr. Jemison's imagination." J.A. at xlvi, li (Sanctions Order at 2, 7). The record adequately supports these findings, and the Jemisons have not shown them to be erroneous in any way.
 
 
 31
 Rule 11 explicitly allows for the imposition of sanctions upon a party responsible for the rule's violation, provided that a represented party is not sanctioned for a violation of subsection (b)(2) involving unwarranted legal contentions. See FED.R.CIV.P. 11(c), (c)(2)(A). Here, the sanctions order speaks to the Jemisons' "improper purpose" in " 'string[ing] along' Sunburst with delaying tactics," and their advancement of claims lacking legitimate evidentiary support that unnecessarily multiplied the proceedings. J.A. at li-liii (Sanctions Order at 7-9). A cursory review of the order thus shows that the Jemisons were sanctioned for improper motivations and unfounded factual, not legal, contentions. Because the Jemisons were sanctioned for misrepresenting key facts during both deposition and trial testimony, and knowingly bringing and pursuing claims devoid of evidentiary support, we refuse to hold that the district court abused its discretion by sanctioning the represented parties.
 
 
 32
 Furthermore, the district court's imposition of sanctions without a full evidentiary hearing did not violate due process. The Jemisons were notified well in advance that Sunburst would be seeking sanctions against them individually and against their attorneys,[3] and they filed a written response to Sunburst's request for sanctions. Significantly, Judge Turner presided over the pretrial and trial proceedings and thus was intimately familiar with the basic facts of the litigation, including the Jemisons' financial position and the relative behavior of the Jemisons and their attorneys. See Silverman v. Mutual Trust Life Ins. Co. (In re Big Rapids Mall Assoc.), 98 F.3d 926, 929 (6th Cir.1996) (recognizing that an evidentiary hearing is "not necessarily required where the court has full knowledge of the facts and is familiar with the conduct of the attorneys."); INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc., 815 F.2d 391, 405 (6th Cir.) (explaining that "no hearing is required where an attorney is sanctioned for filing frivolous motions ungrounded in law or fact, and where the judge imposing sanctions has participated in the proceedings."), cert. denied sub nom. Garratt v. INVST Fin. Group, Inc., 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987). Having been afforded ample notice and a meaningful opportunity to be heard on the sanctions issue, the Jemisons and their attorneys received appropriate due process.
 
 
 33
 When it is the client who acts improperly by providing false testimony, a question arises whether sanctions should properly be assessed against the attorney. See In re Big Rapids, 98 F.3d at 932 (holding that without specific findings of wrongdoing, sanctioning the attorneys in that case amounted to vicarious liability for the perceived unreliability of their clients' testimony). However, attorneys are obligated under Rule 11 "to conduct an appropriate investigation into the facts that is reasonable under the circumstances." FED.R.CIV.P. 11, Advisory Committee Notes (1993 Amendments). Here, Judge Turner concluded that, as to the alteration issue, Mr. Jemison's "direct statements and Wetter's lack of memory, although borderline, provide an objectively reasonable basis for Jemison's attorneys to have proceeded as they did." J.A. at lvii-lviii (Order at 13-14). Yet, as to the Jemisons' claims of a superseding guaranty and their entitlement to affirmative damages from Sunburst, the attorneys had not conducted an appropriate inquiry reasonably necessary to assure that such claims were supported by the evidence and not interposed for improper purposes. J.A. at lviii (Order at 14). A simple inquiry into whether the Jemisons had executed a superseding guaranty, or a demand that the Jemisons produce the purported document, would have revealed to the attorneys involved that the existence of this superseding guaranty was, if not entirely illusory, at the very least, questionable. Cf. Mann v. G & G Mfg., Inc., 900 F.2d 953, 959-60 (6th Cir.) (holding that counsel should have known that client's claim was not well-grounded in fact when reasonable pre-filing inquiry would have revealed deficiencies in the client's theory of causation), cert. denied sub nom. Sloan v. G & G Mfg., Inc., 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990). Accordingly, we agree that sanctions were appropriately awarded against Gotten, L & J's attorney, for failing to investigate and verify, within reason, a major factual premise behind the asserted legal claims of his client.
 
 
 34
 The Jemisons also claim that the denial of Sunburst's motion for summary judgment serves to insulate them from all Rule 11 reproach. Before Rule 11 was amended in 1993, it was clear in this circuit that "mere survival of a summary judgment motion ... does not insulate the party from sanctions if it is later determined that all factual claims were groundless." Lemaster, 891 F.2d at 121. While it is true that the drafters of the 1993 amendments contemplated that a party having evidence sufficient to defeat a motion for summary judgment "would have sufficient 'evidentiary support' for purposes of [Rule 11(b)(3) ]," FED.R.CIV.P. 11, Advisory Committee Notes (1993 Amendments), we are not persuaded that the drafters intended the anomaly of insulating from the rule's reach a dishonest litigant who presented false testimony sufficient to overcome summary judgment. Rather, the presentation of false testimony strongly suggests that sanctions are needed to deter the litigant from displaying similarly abusive tactics in the future. Consistent with the purposes behind Rule 11, we hold that litigants cannot avoid sanction under the rule simply by defeating summary judgment on the basis of false evidence. In this case the Jemisons were not rendered sanction-proof because their false testimony sufficed to defeat summary judgment. The district court found that Mr. Jemison's deposition testimony regarding the superseding guaranty was "quite simply, false," J.A. at li (Sanctions Order at 7), a finding that has not been shown to be erroneous. Had Mr. Jemison testified truthfully, in all likelihood, Sunburst would have been granted summary judgment, and both Sunburst and the court would have been spared the need to undergo a full trial.
 
 
 35
 Even though Rule 11 now "de-emphasizes monetary sanctions and discourages direct payouts to the opposing party," Ridder, 109 F.3d at 294, the rule explicitly allows for expenses "incurred as a direct result of the violation" to be paid directly to the other party "if imposed on motion and warranted for effective deterrence." FED.R.CIV.P. 11(c)(2). The drafters note that a direct payout to the injured party is particularly appropriate for Rule 11(b)(1) violations involving improper motivations of the type found here. See FED.R.CIV.P. 11, Advisory Committee Notes (1993 Amendments). Judge Turner also recognized that the Jemisons' wealth was "largely protected from any efforts by Sunburst to execute or garnish," and that this supported the order to pay the sanctions directly to the injured party. See J.A. at liii (Sanctions Order at 9). Moreover, the Jemisons never challenged their ability to pay nor opposed Sunburst's affidavits detailing the bank's expenses incurred in contesting the Jemisons' claims. Thus, we agree that the present case called for a direct payout to the injured party in an amount that we believe was based upon the evidentiary showing, necessary for deterrence, and well within the court's discretion.
 
 III. CONCLUSION
 
 36
 Having reviewed the circumstances of this case, we are convinced that the district court did not abuse its discretion in sanctioning the persons directly responsible for, and those attorneys who could have easily unmasked, the blatant litigation abuses occurring below. The order of the district court imposing sanctions is AFFIRMED.
 
 
 
 [1]
 Scroggs voluntarily dismissed his appeal of the sanctions order on May 24, 1996
 
 
 [2]
 Because the evidence fails to demonstrate an existent financial or other interest under § 455(b)(4), a challenge based upon § 455(b)(1), actual personal bias or prejudice, similarly falls short of the proof in the present case. Cf. Liteky v. United States, 510 U.S. 540, 552-53, 553 n. 2, 114 S.Ct. 1147, 1155-56, 127 L.Ed.2d 474 (1994) (distinguishing between subjective bias or prejudice proscribed by § 455(b)(1) and the objective appearance of bias or prejudice proscribed by § 455(a))
 
 
 [3]
 By serving the sanctions motion on the Jemisons in August and then waiting until November to file it with the court, Sunburst fully complied with Rule 11's "safe harbor" procedural prerequisite. See FED.R.CIV.P. 11(c)(1)(A); Ridder v. Springfield, 109 F.3d 288, 294-95 (6th Cir.1997)