**Jocelyn THOMPSON, Plaintiff,**

v.

**UNITED TRANSPORTATION UNION, Defendant.**

**No. 99–2288–JWL.**

United States District Court, D. Kansas.

March 27, 2001.

---

Sarah A. Brown, Parkinson, Foth & Orrick, Lenexa, KS, Sharon A. Coberly, Overland Park, KS, James S. Margolin, Kanas City, MO, for plaintiff.

G. Michael O'Neal, Christopher H. Leach, Hubbell, Sawyer, Peak, O'Neal & Napier, Kansas City, MO, Joseph Guerrieri, Jr., Jeffrey A. Bartos, Guerrieri, Edmond & Clayman, P.C., Washington, DC, Robert D. Loughbom, Lenexa, KS, for defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Jocelyn Thompson filed suit against defendant United Transportation Union alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Specifically, plaintiff claimed that she was subjected to sexual harassment, sex discrimination and retaliation by union representatives. In addition, plaintiff claimed that union representatives failed to assist her in connection with her complaints concerning alleged discriminatory and retaliatory conduct by her employer. Finally, plaintiff asserted that the union's conduct led to her constructive discharge.

On December 19, 2000, the court granted defendant's motion for summary judgment and dismissed plaintiff's complaint in its entirety. *See Thompson v. United Transp. Union,* No. 99–2288–JWL, 2000 WL 1929963 (D.Kan. Dec.19, 2000). This matter is now before the court on defendant's motion for Rule 11 sanctions and for attorneys' fees as prevailing party (doc. # 98) and plaintiff's motion to alter or amend the judgment (doc. # 100). As set forth in more detail below, both motions are denied.[1]

● **Background**

Plaintiff began her employment with Kansas City Southern Railroad ("KCSR") in April 1995 at KCSR's Pittsburg, Kansas depot. During the first several years of her employment with KCSR, plaintiff worked as a conductor. As a conductor, plaintiff was represented for collective bargaining purposes by the United Transportation Union ("UTU"). The UTU was the certified collective bargaining representative for the conductors at KCSR during the entire period of plaintiff's employment. From June 1995 through the time she resigned her employment in May 1999, plaintiff was the only female member of the UTU at the Pittsburg, Kansas depot.

On October 16, 1998, plaintiff filed a charge of discrimination with the EEOC against both KCSR and the UTU based on allegations of sex discrimination and sexual harassment. In May 1999, plaintiff settled her claims against KCSR. In exchange for $350,000, plaintiff agreed to release "any and all persons" from all claims "arising in any manner out of, relating to, or connected with [plaintiff's] KCSR employment or the relinquishment of her KCSR employment rights." She also agreed to resign her employment with KCSR, effective May

---

1. Plaintiff also requests oral argument (doc. # 114) on defendant's motion for Rule 11 sanctions and for attorneys' fees as prevailing party. Because the court denies defendant's motion even without the assistance of oral argument, plaintiff's request is denied.

21, 1999. Plaintiff then filed this suit against the UTU. In December 2000, the court granted summary judgment in favor of the UTU on all claims.

● **Defendant's Motion for Rule 11 Sanctions and Attorneys' Fees as Prevailing Party**

In its motion, defendant asserts that Rule 11 sanctions (in the form of reasonable attorneys' fees and expenses incurred as a result of plaintiff's suit) are warranted against plaintiff's counsel because plaintiff's counsel filed suit against defendant despite the existence of a release agreement barring plaintiff's claims against defendant and because plaintiff's counsel pursued a constructive discharge claim when in fact plaintiff voluntarily resigned her position in exchange for $350,000 from her employer. For these same reasons, defendant seeks an award of attorneys' fees pursuant to section 706(k) of Title VII. *See* 42 U.S.C. § 2000e–5(k) (allowing the "prevailing party" in a Title VII action to recover reasonable attorneys' fees). For the reasons set forth below, defendant's motion is denied.

● Procedural Considerations

■ Plaintiff initially challenges defendant's motion on a variety of procedural grounds. First, plaintiff points out that defendant's motion fails to comply with the local rules of this Court in that the motion is not signed by local counsel. *See* D.Kan. R. 83.5.4(c) ("All pleadings or other papers signed by an attorney admitted pro hac vice shall also be signed by a member of the bar of this court in good standing....").[2] Plaintiff asks the court to strike defendant's motion on this basis. In response to plaintiff's argument, defendant states only that "[i]t has not been the practice of this Court to apply such a harsh sanction in these circumstances."

Defendant does not explain its failure to have local counsel sign the motion for sanctions (or previous pleadings in the case) and does not ask to be excused for its conduct. Worse yet, defendant has not bothered to correct the defect by filing an amended motion signed by local counsel. *Cf. Biocore Med. Tech., Inc. v. Khosrowshahi,* 181 F.R.D. 660, 668 (D.Kan.1998) (declining to disqualify counsel for violation of Local Rule 83.5.4(c) where counsel took action to remedy violation including having local counsel sign all challenged documents). In any event, regardless of what the "practice" of the judges in this District has been, defendant's failure to have local counsel sign the motion is clearly a basis on which the court could deny defendant's motion. *See FDIC v. Fleischer,* No. 93–2062–JWL, 1996 WL 707030, at *3 n. 2 (D.Kan. Oct.16, 1996). As Judge Vratil of this District has stated, "[t]he rule is not merely a technical requirement, but an attempt to keep local counsel abreast of the proceedings to which her name and reputation are attached." *See Biocore,* 181 F.R.D. at 669. Defendant's pro hac vice counsel is strongly cautioned that future violations of this rule—in this case or any other case before the court—will result in counsel's disqualification or the court's rejection of counsel's pleadings.

■ Next, plaintiff argues that defendant's motion for Rule 11 sanctions should be denied because the motion was filed in conjunction with a motion for attorneys' fees as a prevailing party under section 706(k) of Title VII. *See* Fed.R.Civ.P. 11(c)(1)(A) ("A motion for sanctions under this rule shall be made separately from other motions or requests...."). The court concludes that defendant's filing sat-

---

**2.** In fact, it appears that defendant's pro hac vice counsel have repeatedly disregarded this rule throughout the litigation process even after plaintiff's counsel reminded defendant's counsel of the rule.

isfies Rule 11's separate filing requirement. As one court has recognized:

> The drafters instruct that a "separate" motion is one that is "not simply included as an additional prayer for relief contained in another motion." Fed. R.Civ.P. 11 Advisory Committee Notes (1993 Amendments). As we understand it, this requirement is intended to highlight the sanctions request by preventing it from being tacked onto or buried in motions on the merits, such as motions to dismiss or for summary judgment. The requirement does not foreclose combining a Rule 11 request with other provisions regulating attorney behavior, such as § 1988 and § 1927. To require [defendant] to request Rule 11 sanctions separate from other requests for attorney fees based on the same conduct would amount to needless duplication of paper, time, and effort, for practitioners as well as the courts.

See *Ridder v. City of Springfield*, 109 F.3d 288, 294 n. 7 (6th Cir.1997). For the reasons set forth by the Sixth Circuit in Ridder, the court rejects plaintiff's argument that defendant's motion violates the separate filing requirement of Rule 11.

Plaintiff also maintains that defendant's motion does not comply with Rule 11's "safe harbor" provision. See Fed.R.Civ.P. 11(c)(1)(A) ("A motion for sanctions … shall not be filed with or presented to the court unless, within 21 days after service of the motion … the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected."). While it is undisputed that defendant served plaintiff's counsel with a Rule 11 motion in July 2000, plaintiff claims that the motion defendant filed with the court on January 2, 2001 is a "distinctly different" motion. According to plaintiff, then, the safe harbor provision has not been satisfied because defendant's pro hac vice counsel essentially "ambushed" plaintiff's counsel with the present Rule 11 motion. The court has reviewed the motion served on plaintiff's counsel in July 2000 and has compared that motion to the motion filed with the court in January 2001. The motions are the same in all significant aspects. The motion served on plaintiff's counsel in July 2000 contains the same allegations of sanctionable conduct as the motion filed with the court and contains the same legal arguments (including the same case citations) as the motion filed with the court. The only difference between the two motions is that the January 2001 motion contains references to the court's summary judgment rulings and includes a request for attorneys' fees under section 706(k) of Title VII. In this respect, then, the "safe harbor" provision has not been violated.

Finally, plaintiff asserts that defendant's motion is untimely because it was filed after the court granted summary judgment in favor of defendant. In support of her argument, plaintiff relies primarily on the Sixth Circuit's decision in Ridder. In *Ridder*, the district court, upon the motion of one of the defendants, sanctioned the plaintiff's counsel pursuant to Rule 11. See *Ridder*, 109 F.3d at 290. The defendant filed the motion one month after the court granted summary judgment in its favor, but had never served the motion on plaintiff's counsel. See *id.* On appeal, the Sixth Circuit vacated the district court's order because the defendant filed the motion after the controversy had been adjudicated and without having served the motion on the plaintiff for the 21–day period. See *id.* at 296–97. The Circuit clearly held that both service and filing of a Rule 11 motion must occur prior to final judgment. See *id.* at 297.

The facts here, of course, are different than those presented in Ridder in that defendant here did serve plaintiff with the motion more than 21 days before filing the

motion. The facts presented here, however, are similar to those in Ridder in that defendant did not file its motion until after the court granted summary judgment and dismissed plaintiff's complaint in its entirety. To complicate matters, the Sixth Circuit, in an unpublished opinion, subsequently retreated from its statements in Ridder concerning the filing of a Rule 11 motion prior to final judgment. *See Powell v. Squire, Sanders & Dempsey,* Nos. 98–3668, 98–3670, 1999 WL 519186 (6th Cir. July 16, 1999) ("The determination in Ridder that the motion was required to be filed with the court prior to adjudication of the case was unnecessary because the defendant failed to comply with Rule 11 when it did not serve the motion on the plaintiff's counsel for the twenty-one day 'safe harbor' period. Accordingly, to the extent that Ridder stands for such a proposition, it is dicta and not binding on this court."). In *Powell,* the Sixth Circuit rejected the plaintiff's argument that the defendant's motion for Rule 11 sanctions was untimely where the defendant served his Rule 11 motion four months prior to the district court's dismissal of the action and filed the motion two weeks after the court's order dismissing the action. *See id.* at *2–3.[3]

To complicate matters even further, the Tenth Circuit has cited with approval the Sixth Circuit's opinion in Ridder for the proposition that a Rule 11 motion filed after summary judgment is ineffective. *See Hutchinson v. Pfeil,* 208 F.3d 1180, 1183–84 (10th Cir.2000).[4] In *Hutchinson,* the defendants, after prevailing on summary judgment, filed a motion for attorney fees under section 1927. *See id.* at 1182.

The district court then sua sponte considered and awarded Rule 11 sanctions. *See id.* at 1183. Emphasizing that the defendants had not moved for sanctions under Rule 11, the Tenth Circuit stated, "as the motion was filed subsequent to summary judgment, long after disposition of the interlocutory disputes cited as sanctionable conduct, reliance on Rule 11 would have been untimely and in violation of the rule's twenty-one day 'safe harbor' provision." *See id.* at 1183–84 (emphasis added). In support of this statement, the court cited Ridder. *See id.* at 1184. While the Tenth Circuit, then, did not directly address the issue before the court today, the Circuit's decision in Hutchinson strongly suggests that if faced with the issue, the Circuit would follow the Ridder decision and hold that a Rule 11 motion filed after summary judgment (regardless of whether service of the motion occurred prior to judgment and within the 21–day safe harbor period) is untimely.

The court is inclined to deny defendant's motion as untimely as it was filed after the entry of summary judgment and because defendant's counsel offers no explanation whatsoever for waiting until that late date to file the motion. If defendant's counsel truly believed that plaintiff's conduct was so abusive and vexatious as to warrant service of the Rule 11 motion in July 2000, then defendant's counsel should have pursued that motion by filing it with the court shortly after the expiration of the 21–day safe harbor period. Instead, defendant's counsel elected to wait six months, all the while spending additional time and money in the discovery process and the summary judgment process.[5] The court cannot com-

---

3. The court has not uncovered any other cases presenting facts like those presented here—where the movant served the Rule 11 motion prior to final judgment, gave the requisite 21–day safe harbor period, and then filed the motion after final judgment.

4. Significantly, the Tenth Circuit's decision in Hutchinson was rendered after the Sixth Circuit's unpublished Powell decision.

5. In fact, defendant now seeks $136,356 in attorneys' fees and costs for this litigation.

prehend why defendant would not attempt to avoid these fees and costs by filing its motion earlier. In the end, however, the court need not decide whether defendant's motion was timely filed because the court denies that motion on the merits. Suffice it to say that defendant and its counsel would be better served by reexamining their own litigation tactics rather than condemning plaintiff's counsel for her litigation tactics.

● Substantive Considerations

In its motion, defendant first contends that Rule 11 sanctions are warranted by virtue of the fact that plaintiff's counsel filed suit against defendant despite the existence of a release agreement barring plaintiff's claims against defendant. According to defendant, the plain language of the settlement agreement and release entered into between plaintiff and KCSR released "all persons," including the union and its representatives, from any claims arising out of plaintiff's employment. Indeed, the court granted summary judgment in favor of defendant on this basis. *See Thompson v. United Transp. Union,* No. 99–2288–JWL, 2000 WL 1929963, at *5–6 (D.Kan. Dec.19, 2000). As explained in more detail below, however, the mere fact that the court concluded that defendant was entitled to summary judgment on plaintiff's claims in light of the release does not mandate the conclusion that plaintiff's claims were frivolous or not "warranted by existing law."

■ An attorney's signature on the complaint in a suit in federal court constitutes a certificate "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, ... the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." *See*

Fed.R.Civ.P. 11(b)(2). As the Tenth Circuit has recognized, "[p]art of a reasonable attorney's prefiling investigation must include determining whether any obvious affirmative defenses bar the case." *See White v. General Motors Corp.,* 908 F.2d 675, 682 (10th Cir.1990). An attorney, however, "need not forbear to file her action if she has a colorable argument as to why an otherwise applicable affirmative defense is inapplicable in a given situation." *Id.* The attorney's argument, of course, must be nonfrivolous; "she runs the risk of sanctions if her only response to an affirmative defense is unreasonable." *Id.*

■ Prior to filing the complaint against defendant, plaintiff's counsel had knowledge of the settlement agreement and release with KCSR. At the very least, however, plaintiff's counsel presented a colorable, nonfrivolous argument as to why the release should not bar plaintiff's claims against defendant. Defendant, for example, was no where named in the release. When presented with defendant's argument in the summary judgment context that the release nonetheless barred plaintiff's claims, the court uncovered very few cases that addressed the release of unnamed parties. The Tenth Circuit was essentially silent on the issue. While the court ultimately concluded that the plain language of the agreement evinced an intent to release defendant, the court reached this conclusion only after (what the court thought was) a thoughtful analysis of the issue in light of the limited relevant case law. In other words, defendant's argument was certainly not a "slam dunk" and plaintiff acted competently and reasonably in pursuing her claims against defendant despite the existence of the release agreement. Sanctions are not appropriate in these circumstances.

■ Next, defendant claims that sanctions are warranted because plaintiff's counsel pursued a constructive discharge claim when plaintiff voluntarily resigned her position in exchange for $350,000 from her employer. According to defendant, no reasonable attorney could have believed that a valid claim of constructive discharge would lie on the facts presented. *See Barrett v. Tallon*, 30 F.3d 1296, 1301–02 (10th Cir.1994) (district court must apply an objective standard—"whether a reasonable and competent attorney would believe the argument has merit"—in ascertaining whether there was a good faith basis to sue). The court granted summary judgment in favor of defendant on plaintiff's constructive discharge claim for two reasons—because the court concluded that defendant did not commit any "illegal discriminatory acts"[6] and because plaintiff voluntarily resigned her employment with KCSR in exchange for $350,000. *See Orback v. Hewlett–Packard Co.*, 97 F.3d 429, 433–34 (10th Cir.1996) (no evidence to support inference of constructive discharge where plaintiffs "left voluntarily, availing themselves of the benefit of a severance package in exchange for their resignations"). Nonetheless, the court finds that it was objectively reasonable for plaintiff's counsel to argue that plaintiff was essentially forced to resign in connection with her KCSR settlement in light of plaintiff's claims that her working conditions were intolerable (in part because of defendant's conduct on which plaintiff's sexual harassment, sex discrimination and retaliation claims were based). Plaintiff's counsel's pursuit of a constructive discharge claim in these circumstances simply does not rise to the level of a Rule 11 violation.

For the foregoing reasons, defendant's motion for Rule 11 sanctions is denied. For those same reasons, defendant's motion for attorneys' fees pursuant to section 706(k) of Title VII is denied. *See Figures v. Board of Public Utilities*, 967 F.2d 357, 362 (10th Cir.1992) (finding denial of Rule 11 sanctions appropriate for the same reasons as denial of attorneys fees under section 1988).[7]

● Plaintiff's Motion to Alter or Amend Judgment

Plaintiff moves to alter or amend the court's order granting summary judgment in favor of defendant on all claims. According to plaintiff, the court "misapprehended plaintiff's position, mistakenly found material disputed facts to be undisputed, and mistakenly decided issues not presented for determination." Plaintiff asks the court to reconsider its decision on each of plaintiff's claims. As set forth in more detail below, plaintiff's motion is denied. *See Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir.1997) (A motion to alter or amend the judgment should be granted only "to correct manifest errors of law or to present newly discovered evidence.").

● Effect of Settlement Agreement and Release

■ The court begins with plaintiff's arguments concerning the effect of plaintiff's settlement agreement with KCSR. As mentioned above, the court granted summary judgment to defendant based on the

---

6. A constructive discharge occurs when "the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Sanchez v. Denver Public Schools*, 164 F.3d 527, 534 (10th Cir.1998) (citing *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir.1986)).

7. Defendant does not argue in its motion that the court should apply a different standard to defendant's claim for attorneys' fees under section 706(k). Rather, defendant asserts that the standards are identical.

court's conclusion that the plain language of the settlement agreement and release entered into between plaintiff and KCSR released "all persons," including the union and its representatives, from any claims arising out of plaintiff's employment. In her motion to alter or amend, plaintiff first contends that the court disregarded two material facts that, when viewed in the light most favorable to plaintiff, cannot be reconciled with the court's conclusion that the plain language of the agreement evinces an intent on the part of plaintiff to release her claims against defendant. These facts are (1) that the settlement agreement expressly states in a preliminary "whereas" clause that "KCSR and [plaintiff] desire to compromise and settle all controversies between them" and (2) that the settlement agreement expressly references plaintiff's EEOC charges pending against KCSR, but does not reference plaintiff's EEOC charge pending against defendant. While plaintiff highlighted and the court considered these facts in analyzing defendant's motion for summary judgment, plaintiff is correct that the court failed to reference or discuss these particular facts in its order granting summary judgment. Thus, the court does so here. In the settlement agreement and release, the parties set forth four preliminary "whereas" clauses prior to the numbered paragraphs containing the specific promises made by the parties. One of these "whereas" clauses states: "WHEREAS, by reason of the foregoing, KCSR and [plaintiff] desire to compromise and settle all controversies between them." (emphasis in original). The court disagrees with plaintiff's contention that this recital undermines the court's conclusion that the plain language of the agreement evinces an intent to release all persons and entities, including defendant. The paragraph is separate and apart from the portion of the agreement wherein plaintiff actually releases her claims. In essence, the particular "whereas" clause only serves to identify the parties to the agreement and, as the court noted in its order granting summary judgment and as plaintiff concedes, entities who are not parties to a release may nonetheless secure the benefit of that release in certain circumstances.[8] The court also recognizes that the release expressly references plaintiff's EEOC charges pending against KCSR but makes no reference to plaintiff's charge against defendant. This, too, is of little consequence to the court's conclusion that the plain language of the release bars plaintiff's claims against defendant. Again, the particular paragraph referencing plaintiff's charges against KCSR is separate and apart from the paragraph in which plaintiff releases her claims against "any and all persons ... from claims ... arising in any manner out of, relating to, or connected with [plaintiff's] KCSR employment." The paragraph addressing her EEOC charges against KCSR (and the first numbered paragraph in the release) states only as follows:

> In connection with the mediation and resolution of Charge Numbers 281 99 0087 and 281 99 0560, filed by [plaintiff] with the EEOC, and to resolve all other disputes and issues, [plaintiff] has

---

8. As noted by Professor Farnsworth, "American courts have often repeated with approval Lord Esher's three rules: 'If the recitals are clear and the operative part is ambiguous, the recitals govern the construction. If the recitals are ambiguous and the operative part is clear, the operative part must prevail. If both the recitals and the operative part are clear, but they are inconsistent with each other, the operative part is to be preferred.' *Ex parte Dawes*, 17 Y.B.D. 275, 286 (1886)." E. Allan Farnsworth, Contracts § 7.10 n. 15 (2d ed.1990). Here, the "operative part" is clear—all persons were released from claims arising out of plaintiff's employment with KCSR.

agreed to resolve her employment with KCSR with no possibility of reemployment, and KCSR has agreed to pay to [plaintiff] the sum of $350,000. The Settlement Agreement among the EEOC, KCSR and [plaintiff], resolving the two charges identified above, is incorporated herein by this reference.

This language indicates that plaintiff's EEOC charges against KCSR had already been resolved at a mediation with the EEOC prior to the time the release was drafted and executed and that the purpose of the paragraph set forth above was simply to incorporate the issues resolved and the promises made at the mediation with respect to plaintiff's EEOC charges against KCSR into the release agreement. When read in its entirety, however, the release agreement is much broader in scope. The remaining paragraphs address issues and claims not relating to plaintiff's EEOC charges against KCSR and, apparently, not resolved or discussed in the mediation with the EEOC. The fourth paragraph, for example, contains plaintiff's promise, "in further consideration" of the settlement amount, to withdraw all grievances asserted against KCSR through defendant. The second paragraph contains plaintiff's promise to release "any and all persons ... from claims ... arising in any manner out of, relating to, or connected with [plaintiff's] KCSR employment." As the court noted in its previous order, this paragraph expressly forecloses all actions against all persons connected with plaintiff's employment. Because plaintiff's union membership is invariably intertwined with her employment at KCSR, the release bars plaintiff's claims against defendant.

Plaintiff also argues that the court failed to apply controlling law in determining that the plain language of the release barred plaintiff's claims against defendant.

Specifically, plaintiff contends that the court's decision is contrary to the Supreme Court's decisions in *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971) and *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964). The court, however, analyzed these cases in connection with the release signed by plaintiff, followed Zenith's mandate that the effect of a release upon unnamed parties "shall be determined in accordance with the intentions of the parties," and ultimately concluded that the particular facts surrounding the releases at issue in Zenith and Aro were distinguishable from the language of the particular release at issue here. *See Thompson v. United Transp. Union*, No. 99–2288–JWL, 2000 WL 1929963, at *5–6 (D.Kan. Dec.19, 2000). Thus, while plaintiff may disagree with the court's application of Zenith and Aro to the facts of this case, mere disagreement with how the court applies the law does not support a Rule 59(e) motion. *See Torre v. Federated Mutual Ins. Co.*, 906 F.Supp. 616, 619 (D.Kan. 1995).

■ Plaintiff's only other argument with respect to the release is that the court's decision is contrary to the public policy interest in encouraging settlements. However, it is axiomatic that Rule 59(e) may not be used to raise arguments that a party had the ability to address in the first instance. *See Lynn v. Simpson*, No. 97–3209–JWL, 2000 WL 1389922, at *2 (D.Kan. Feb.2000). Plaintiff's summary judgment briefing contains no discussion of the public policy implications of concluding that the release barred plaintiff's claims against defendant. Thus, it is simply too late for plaintiff to invoke this argument and the court need not consider it here.[9]

---

9. In any event, plaintiff's public policy argument does not suggest that the court committed clear error or that manifest injustice would result from the court's decision.

Even assuming, however, that the court's conclusion with respect to the release is incorrect, the court would nonetheless deny plaintiff's motion to alter or amend as summary judgment on the merits of plaintiff's claims remains appropriate.[10]

● Sexual Harassment Claim

With respect to her sexual harassment claim, plaintiff first claims that the court erred by limiting her claim to the conduct of union representatives when plaintiff also challenged the conduct of union members. In that regard, the court stated in its order that "only those acts and comments committed or made by union representatives—during the time period when those individuals were agents of the union—may properly support plaintiff's sexual harassment claims against the union on a theory of direct liability." See Thompson v. United Transp. Union, No. 99–2288–JWL, 2000 WL 1929963, at *7 n. 10 (D.Kan. Dec.19, 2000). Plaintiff notes that the court cited no authority for this proposition. The court notes that plaintiff herself cites no authority suggesting that a union may be held liable for the sexually harassing conduct of its members who are not representatives or agents of the union. In any event, the court's statement is supported by Tenth Circuit precedent. See Witt v. Roadway Exp., 136 F.3d 1424, 1431 (10th Cir.1998) (affirming 12(b)(6) dismissal of harassment claim against union based on conduct of union members where plaintiff failed to allege that members were acting as union representatives or agents of the union when they harassed him); Anspach v. Tomkins Indus., Inc., 817 F.Supp. 1499, 1514 (D.Kan.1993) (union not liable for the actions of plaintiff's union coworkers who were not representatives or agents of the union), aff'd, Anspach v. Sheet Metal Workers' Int'l Ass'n Local No.2, 51 F.3d 285, 1995 WL 133385, *2 (10th Cir. Mar.28, 1995). While plaintiff's papers are replete with allegations concerning the harassing conduct of union members, there is no evidence or allegation that these union members held official positions with the union or were acting in any union capacity during the time they allegedly harassed plaintiff. Similarly, there is no evidence that the conduct of these members was instigated, authorized, adopted or ratified by the union. See Anspach, 817 F.Supp. at 1514. In the absence of such evidence, plaintiff's claim against the union for the alleged harassing conduct of its union members was properly dismissed. See Witt, 136 F.3d at 1431 ("Without an allegation of some factual occurrence that could constitute harassment by a union representative, the claim must be dismissed.").

Plaintiff also challenges the court's conclusions with respect to plaintiff's evidence of harassment by three union representatives—Jim Wood, Mark Crouch and Dave George. In that regard, the court concluded that the "handful of comments" allegedly made by these union representatives were not sufficiently severe or pervasive to state a claim for sexual harassment within the meaning of Title VII. Plaintiff's primary complaint is that the court disregarded certain paragraphs in her affidavit in which she alleges that Jim Wood and Mark Crouch referred to her or called her a "cunt-ductor," a "whore," and a "bitch," and that Jim Wood referred to her or called her "tavern-trash." The evidence which plaintiff points to concerning these statements simply is not helpful to her position. The court reiterates its conclusion that plaintiff's allegations are insufficient to support her claim. In her affidavit, plaintiff states only that "I heard my

---

10. The court granted summary judgment in favor of defendant on two separate and independent bases—the release agreement and the merits of plaintiff's claims.

union representatives Mark Crouch and Jim Wood ... refer to me as or call me a "cunt-ductor." " The court is left to speculate about whether she heard Mssrs. Crouch and Wood use this name once, twice or more frequently and about whether Mssrs. Crouch and Wood used this name during the time period in which they were union agents. In the absence of any evidence concerning when or how often she heard Mssrs. Crouch and Wood use these names, as offensive as those names are, plaintiff's claim still fails. *See Woodward v. City of Worland,* 977 F.2d 1392, 1398 (10th Cir.1992) (vague, non-time-specific and conclusory allegations of harassment insufficient to support claim).

Next, plaintiff claims that the court improperly disregarded two specific comments made by Mr. Wood. The court disregarded these comments because it was "undisputed that these comments, to the extent they were made, were made prior to the time that Mr. wood became a union representative." *See Thompson,* 2000 WL 1929963, at *7 n. 11. One comment allegedly made to plaintiff, "I'm woody, I'm up inside you about now," was made in 1995. The other comment was made, according to plaintiff, in "late 1997 or early 1998." This comment consisted of Mr. Wood asking plaintiff's engineer, "Where's your conductor at? She must be shacked up with all the BN guys." [11] In her response to defendant's motion for summary judgment, plaintiff offered no evidence that Mr. Wood was a union representative in 1995 or 1997. Her only evidence in that regard was a statement from Robert Martin, another union agent, that Mr. Wood was a union representative "during 1998." In its reply brief, defendant, through the affidavit of Michael Matheny, a UTU General Chairman, demonstrated that Mr. Wood was plaintiff's union representative only from June 1998 through December 1998. The court relied on this statement in concluding that the two statements made by Mr. Wood were made prior to the time he was plaintiff's union representative. Plaintiff asserts that the court should have disregarded this fact as it was raised for the first time in defendant's reply brief and that the proper inference from plaintiff's evidence is that Mr. Wood was plaintiff's union representative during the entire time that plaintiff was a member of the UTU. The court disagrees with both of plaintiff's contentions. The fact was properly asserted for the first time in defendant's reply brief because plaintiff did not articulate the specific comments made by Mr. Wood (and did not set forth her evidence about when he was a union representative) until she filed her responsive brief. Because plaintiff provided no evidence concerning when Mr. Wood became a union representative and it was her burden to do so, the court properly relied on the evidence supplied by defendant. Moreover, plaintiff still has not provided the court with any evidence controverting Mr. Matheny's testimony—either in her surreply or in her motion to alter or amend.[12] Thus, in the absence of any evidence from plaintiff that Mr. Wood was plaintiff's union representative in 1995, the court again disregards the alleged comment made by Mr. Wood that "I'm woody, I'm up inside you about now." Finally, even if the court were to consider the statement allegedly made in late 1997 or early 1998 to the effect that plaintiff was "shacking up with all the BN guys," this one statement would not change the

---

11. The court presumes that "BN" refers to Burlington Northern.

12. Plaintiff simply asserts that Mr. Matheny has "no personal knowledge of the fact."

Plaintiff fails to explain this assertion in any way and a review of Mr. Matheny's affidavit clearly reveals that plaintiff's bald assertion lacks merit.

court's conclusion that plaintiff has failed to set forth facts sufficient to state a claim for sexual harassment within the meaning of Title VII.

Plaintiff also reiterates her arguments that Dave George, after a period in which plaintiff had gained some weight, spread rumors that plaintiff was pregnant. Although the court did not specifically mention this evidence in its initial order, it did consider such evidence in evaluating plaintiff's claim. Other than her testimony that the rumors made her work environment "negative" and that her coworkers "frequently talked about [her] being pregnant," plaintiff offers no evidence that these rumors were severe or pervasive enough to alter the terms or conditions of her employment. While such rumors may have been annoying to plaintiff, no reasonable jury could conclude that plaintiff was subjected to sexual harassment within the meaning of Title VII based on the mere fact that rumors were circulating around the workplace that she was pregnant.

Finally, plaintiff criticizes the court for ignoring other evidence of alleged harassment as described by plaintiff in her deposition. Specifically, plaintiff refers the court to portions of her deposition in which she testified that her car tires were slit at least seven times; her car was "keyed" on two occasions; her windshield was "busted" one time; and that she was constantly afraid that "they" would sabotage her car. She also testified that, after she returned from having a hysterectomy, "a lot of them thought" that she had had an abortion and she heard rumors that she had AIDS. As an initial matter, the court notes that while plaintiff's deposition was attached to plain-

tiff's summary judgment papers, plaintiff never referenced these particular acts or comments in her papers and never directed the court to the portion of her deposition in which she discusses these acts and comments. It is not acceptable for plaintiff simply to provide her entire deposition testimony in the hopes that the court will sift through it in search of evidentiary support for plaintiff's assertions. *See SEC v. Thomas*, 965 F.2d 825, 827 (10th Cir. 1992) (holding that in the absence of essential references to the record in a party's brief, the court will not "sift through" the record to support claimant's arguments). In any event, having now read those portions of plaintiff's deposition, the court concludes that plaintiff's claim still fails. In these excerpts of her deposition, plaintiff makes no allegation or assertion with respect to who slashed her tires, broke her windshield or keyed her car. She fails to identify any particular person who allegedly said she had AIDS and/or had an abortion and she fails to identify anyone who might have started or spread such rumors. In the absence of any evidence that a union agent was responsible for these acts or comments, plaintiff's allegations are of no consequence. *See Witt v. Roadway Exp.*, 136 F.3d 1424, 1431 (10th Cir.1998).[13]

● Sex Discrimination Claims

With respect to her sex discrimination claims, plaintiff asserts that she "pled theory 'A', defendant moved to dismiss theory 'B,' which plaintiff did not plead, and the Court granted summary judgment based upon theory 'C.'" Specifically, plaintiff claims that her sex discrimination claims were based solely on the theory that de-

---

**13.** The remaining evidence highlighted by plaintiff (e.g., Mr. George's comment that he talked to plaintiff because he was "hoping to get some," Mr. Crouch's comment that he could not return to the Kansas City depot because "some nigger bitch accused [him] of pinching her on the ass," and the fact that

Mr. Crouch was "rude" to plaintiff) was addressed by the court in its initial order. Thus, because the court has already rejected plaintiff's arguments with respect to the significance of this evidence, the court need not do so again here.

fendant failed to assist and/or protect plaintiff with regard to her discrimination claims; that defendant moved to dismiss on the grounds that defendant did not violate its duty of fair representation; and that the court dismissed plaintiff's claims because the record contained no evidence suggesting that male union members received more favorable treatment by defendant. According to plaintiff, she did not put forth any evidence of disparate treatment because defendant did not move to dismiss on that basis.

Plaintiff's argument lacks merit. The court fully analyzed plaintiff's sex discrimination claims under the failure-to-assist and failure-to-protect theories espoused by plaintiff and under the case law cited by plaintiff in her summary judgment response and her motion to alter or amend, primarily the Supreme Court's decision in *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). *See Thompson v. United Transp. Union*, No. 99–2288–JWL, 2000 WL 1929963, at *10 (D.Kan. Dec.19, 2000). Moreover, despite plaintiff's contentions, defendant properly moved for summary judgment on plaintiff's failure-to-assist and failure-to-protect theories. These theories were based in large part on defendant's handling of plaintiff's grievances and defendant supported its motion for summary judgment with relevant Tenth Circuit case law speaking to that issue. *See York v. American Tel. & Tel. Co.*, 95 F.3d 948, 955–56 (10th Cir.1996). While defendant referenced its duty of fair representation, defendant clearly did not characterize plaintiff's Title VII claims as state law claims for breach of the duty of fair representation. Rather, defendant simply used this phrase, as the Tenth Circuit did in York, in describing the essence of plaintiff's Title VII claim—that defendant alleg-

edly violated Title VII in connection with the handling of plaintiff's grievances. Finally, while the court also analyzed, in the context of plaintiff's sex discrimination claims, whether the record contained any evidence that defendant treated plaintiff differently from similarly situated male union members, *see Thompson*, 2000 WL 1929963, at *8, the court did so only because plaintiff made this specific allegation in the pretrial order. Thus, plaintiff's complaint that the court dismissed her claim on a theory that she never pled is disingenuous. In short, defendant properly moved for summary judgment on plaintiff's theories of sex discrimination and the court fully analyzed those theories.

● Retaliation Claim

Plaintiff's retaliation claim was based on the union's alleged refusal to process any of plaintiff's timeslips concerning her Engineer training grievance after she filed her EEOC charge against defendant on October 16, 1998.[14] The court granted summary judgment in favor of defendant on this claim because plaintiff failed to come forward with evidence that defendant failed to process plaintiff's claims. *See id.* at *8–9. Rather, the evidence set forth by defendant (and uncontroverted by plaintiff) demonstrated that plaintiff's subsequent timeslips were held in abeyance by agreement of defendant and KCSR pending arbitration of plaintiff's initial appeal—an appeal that defendant continued to press and that encompassed the same issues and employment rights as plaintiff's subsequent timeslips. *See id.* at *9. In essence, then, the court held that plaintiff failed to show the existence of an adverse action because plaintiff was not deprived of her ability to "expeditiously ascertain and enforce" her rights under the collective bargaining agreement. *See Johnson*

---

**14.** For additional facts regarding plaintiff's Engineer training grievance and her times- lips, see *Thompson*, 2000 WL 1929963, at *1– 2.

*v. Palma,* 931 F.2d 203, 207 (2d Cir.1991). Similarly, the court held that plaintiff failed to show a causal connection between plaintiff's filing an EEOC charge and defendant's alleged refusal to process further her penalty timeslips. *See Thompson,* 2000 WL 1929963, at *10. In that regard, the court noted that plaintiff offered no evidence that defendant's agreement with KCSR to hold plaintiff's subsequent timeslips in abeyance was based on anything other the common practice at KCSR of holding claims in abeyance pending arbitration of related claims. *See id.*

In her motion to alter or amend, plaintiff contends that the court improperly considered defendant's evidence that plaintiff's subsequent timeslips were held in abeyance by agreement of defendant and KCSR pending arbitration of plaintiff's initial appeal because that evidence was presented for the first time in defendant's reply brief. Defendant could not have presented the evidence in its opening brief, however, because plaintiff had never before asserted the particular theory that defendant retaliated against her by failing to process her timeslips after October 1998. In fact, plaintiff did not articulate that theory until her response to defendant's motion for summary judgment.[15] In such circumstances, it was entirely appropriate for defendant to respond to plaintiff's theory in its reply brief. Of course, it would also have been appropriate for plaintiff to ask for leave to file a surreply to respond to the evidence set forth in defendant's reply brief. She never sought such leave and she never notified the court that she intended or desired to file a surre-

ply. While plaintiff filed a surreply just days after the court issued its order granting summary judgment, the court's order was not issued for more than two weeks after defendant's reply was filed. Thus, plaintiff had ample opportunity to notify the court of her intent or desire to file a surreply.[16]

Plaintiff also argues that the court erred in relying on defendant's evidence that plaintiff's subsequent timeslips were held in abeyance by agreement of defendant and KCSR pending arbitration of plaintiff's initial appeal because the evidence, according to plaintiff, was presented in the form of an affidavit that was not based on personal knowledge. According to plaintiff, the affiant, Michael Matheny, could not have personal knowledge of the asserted fact because he was not a union representative in December 1998 when plaintiff's first two sets of timeslips were conferenced. Plaintiff's contention is totally meritless. First, plaintiff has presented no evidence that Mr. Matheny was not a union representative at the relevant time. In fact, the evidence demonstrates that Mr. Matheny was a union representative at the relevant time, but did not become General Chairman with direct responsibility for plaintiff's grievances until January 1999. Moreover, plaintiff has failed to show how the mere fact that Mr. Matheny was not General Chairman in December 1998 mandates the conclusion that Mr. Matheny lacked personal knowledge of the status of plaintiff's grievances, particularly where Mr. Matheny was re-

---

**15.** Plaintiff never asserted this theory in her complaint and never preserved this theory in the pretrial order. Thus, in fact, this claim was waived. *See Hullman v. Board of Trustees of Pratt Community College,* 950 F.2d 665, 668 (10th Cir.1991) (issues not preserved in the pretrial order have been eliminated from the action).

**16.** In any event, as set forth in more detail below, the court has considered the arguments and evidence set forth by plaintiff in her surreply and reaffirms its conclusion that summary judgment in favor of defendant is appropriate on plaintiff's retaliation claim.

sponsible for those grievances beginning in January 1999.

Finally, plaintiff claims that Mr. Matheny's statement that plaintiff's subsequent timeslips were held in abeyance by agreement of defendant and KCSR pending arbitration of plaintiff's initial appeal is contradicted by the deposition testimony of Robert Martin, the General Chairman in December 1998.[17] According to plaintiff, Mr. Martin testified that he was not sure whether all of plaintiff's timeslip claims had been conferenced (her subsequent claims were not) and that he put subsequent claims in abeyance "once they are conferenced." While plaintiff makes no effort to argue or explain the significance of Mr. Martin's testimony (other than to say it contradicts Mr. Matheny's affidavit), the court presumes that plaintiff draws the inference that plaintiff's claims were not held in abeyance by agreement of defendant and KCSR (because they had not yet been conferenced) and, thus, that those claims should have been processed but were not. Mr. Martin's testimony that he generally puts subsequent claims in abeyance once they are conferenced,[18] however, does not controvert Mr. Matheny's testimony that in this particular instance "the parties agreed to hold the further processing of daily time claims in abeyance wherever they were in the grievance-handling process." In any event, even if there is a factual dispute about whether plaintiff's claims were held in abeyance pursuant to an agreement between defendant and KCSR, plaintiff still has failed to come forward with evidence of an adverse action. For even assuming that defendant should have processed her subsequent claims but failed to do so, it remains undisputed that defendant continued to press plaintiff's initial appeal and that the appeal encompassed the same issues and employment rights as plaintiff's subsequent timeslips. Thus, plaintiff's arguments in support of her motion to alter or amend fail to undercut in any way the court's conclusion in its order granting summary judgment that plaintiff failed to show the existence of an adverse action because plaintiff was not deprived of her ability to "expeditiously ascertain and enforce" her rights under the collective bargaining agreement. *See Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir.1991).

● Failure to Assist Claims

The court granted summary judgment in favor of defendant on plaintiff's failure-to-assist and failure-to-protect claims because the collective bargaining agreement between KCSR and defendant did not have a nondiscrimination provision and, thus, neither sex discrimination nor sexual harassment was a grievable claim that defendant could pursue. *See Thompson*, 2000 WL 1929963, at *10. In her motion to alter or amend, plaintiff primarily reiterates the arguments she made in response to defendant's motion for summary judgment and directs the court to the same case law that she did in the summary judgment context. The court has already

---

**17.** This is the argument made by plaintiff in the surreply which she improperly filed without seeking or obtaining leave of court and which was not filed until after the court ruled on the pending motions. *See Brown v. Dietz*, No. 99–2476–JWL, 2000 WL 748112, at *2 (D.Kan. May 23, 2000) (because no provision for the filing of surreplies is found in the local rules of this court, plaintiff must seek leave of court prior to filing any such surreply with the court; when plaintiff does not request or receive such leave, the court need not address issues raised in surreply) (citations omitted).

**18.** In support of Mr. Martin's testimony on this point, plaintiff refers the court to page 79 of Mr. Martin's deposition. This page, however, is not included in the portions of Mr. Martin's deposition that were provided to the court as part of plaintiff's Exhibit I. Thus, the court has not had the opportunity to review Mr. Martin's testimony in context.

considered and rejected these arguments and will not reiterate them here. *See Lynn v. Simpson,* No. 97–3209–JWL, 2000 WL 1389922, at *2 (D.Kan. Feb.28, 2000) (A party cannot invoke Rule 59(e) to rehash arguments previously considered and rejected by the court.). Plaintiff also argues for the first time that defendant could have pursued her discrimination complaints under Article 49 of the collective bargaining agreement. This argument comes far too late in the process. *See id.* (A party cannot invoke Rule 59(e) to raise arguments that should have been raised in the first instance.).[19] In any event, plaintiff has offered no evidence that Article 49 was ever used at any time by defendant to pursue a discrimination grievance of one of its members. *Cf. Rainey v. Town of Warren,* 80 F.Supp.2d 5, 16–17 (D.R.I.2000) (denying summary judgment on plaintiff's Title VII failure-to-file-grievance claims against union, despite the fact that collective bargaining agreement did not contain express clause prohibiting employer discrimination or harassment, where both management and union agreed that sexual harassment and sex discrimination were covered by the collective bargaining agreement).[20]

Plaintiff's failure-to-assist and failure-to-protect claims also included allegations that the union failed to refer her to the EEOC, failed to reasonably investigate her complaints, and failed to protect her from the retaliatory acts of KSCR. The court granted summary judgment on these claims or allegations because plaintiff did not demonstrate that the union had a duty to refer her to the EEOC, to investigate her complaints (that were not grievable anyway), or to protect her from retaliation. *See Thompson,* 2000 WL 1929963, at *11. According to plaintiff, the court erred in granting summary judgment on these allegation because "the UTU did not move for summary judgment on these claims other than to argue that there was no provision in the Collective Bargaining Agreement addressing discrimination or harassment." This argument is meritless. Defendant highlighted the lack of a nondiscrimination provision in the collective bargaining agreement to show that it had no duty to assist plaintiff in any way with respect to her complaints of KCSR's discrimination. As the nonmoving party, then, plaintiff was required to come forward with evidence showing the existence of a material factual issue concerning defendant's duty. She failed to come forward with any evidence in that regard. Plaintiff's evidence (that she reiterates in her motion to alter or amend) that defendant itself had no nondiscrimination policies, that its discrimination training was inadequate, and that it ignored plaintiff's complaints in no way shows that defendant had a duty to protect or assist plaintiff with her discrimination complaints against KCSR. The court reaffirms its order granting summary judgment in favor of defendant on plaintiff's failure-to-assist claims.

**19.** Plaintiff claims that she supported her argument about Article 49 in her summary judgment response at page 20 in Statement of Fact 114. Statement of Fact 114, however, states only that "If a UTU member asked a Local Chairman about filing a discrimination claim, General Chairman Martin would expect the Local Chairman to tell the member to file a written grievance and send it to Martin so he could contact the UTU legal department."

**20.** Article 49 does not, on its face, appear to cover discrimination or harassment claims. Article 49 states: "All claims or grievances must be presented in writing by or on behalf of the employees involved to the officer of the company authorized to receive same within sixty days from the date of the occurrence on which the claim or grievance is based."

### Constructive Discharge Claim

Finally, plaintiff contends that in granting summary judgment on plaintiff's constructive discharge claim, the court "completely disregarded plaintiff's testimony with regard to the intolerable work environment that she suffered through." The court disagrees. As an initial matter, the court granted summary judgment on this claim because it had granted summary judgment on all of plaintiff's substantive claims. *See Thompson,* 2000 WL 1929963, at *11 ("[B]ecause the court has concluded that defendant did not commit any 'illegal discriminatory acts' and is entitled to summary judgment on plaintiff's other claims, the court must grant summary judgment in favor of defendant on plaintiff's constructive discharge claim."). Thus, because the court reaffirms its order granting summary judgment on plaintiff's substantive claims, summary judgment remains appropriate on plaintiff's constructive discharge claim. *See Perez v. Interconnect Devices Inc.,* No. CIV.A. 97–2194–GTV, 1998 WL 781220, at *12–13 (D.Kan. Oct.22, 1998), *aff'd,* 189 F.3d 478, 1999 WL 691663 (10th Cir.1999).

The court also granted summary judgment on plaintiff's constructive discharge claim in light of undisputed evidence that plaintiff voluntarily resigned her employment with KCSR in exchange for $350,000. *See Orback v. Hewlett–Packard Co.,* 97 F.3d 429, 433–34 (10th Cir.1996) (no evidence to support inference of constructive discharge where plaintiffs "left voluntarily, availing themselves of the benefit of a severance package in exchange for their resignations"). In her motion to alter or amend, plaintiff simply reiterates her arguments that she was forced to resign because of the UTU's conduct. The court has previously considered and rejected those arguments.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion for Rule 11 sanctions and for attorneys' fees as prevailing party (doc. # 98) is denied; plaintiff's motion to alter or amend the judgment (doc. # 100) is denied; and plaintiff's request for oral argument (doc. # 114) is denied.

IT IS SO ORDERED.