**B & H MEDICAL, L.L.C., Plaintiff,**

v.

**ABP ADMINISTRATION, INC., and Wright & Filippis, Inc., Defendants.**

No. 02–73615.

United States District Court, E.D. Michigan, Southern Division.

Jan. 28, 2005.

Keith M. Kerwin, Esq., Bingham Farms, Stpehen ·M. Ryan, Esq., Bingham, Farms, MI, for plaintiff.

John A. Cook, Esq., Bloomfield Hills, MI, Sheldon H. Klein, Esq., Detroit, MI, for defendants.

### OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS FOR SANCTIONS

ROSEN, District Judge.

In an Opinion and Order dated October 29, 2004, the Court granted summary judgment in favor of Defendants ABP Administration, Inc. and Wright & Filippis, Inc. on the federal antitrust claims asserted against them in this case by Plaintiff B & H Medical, L.L.C. In light of this ruling, it remains only to resolve two pending motions in which Defendants seek the imposition of sanctions against Plaintiff and its counsel under Fed.R.Civ.P. 11 and 28 U.S.C. § 1927. For the reasons set forth below, the Court finds that a limited award of sanctions is appropriate, tailored to the fees incurred by Defendants as a result of Plaintiff's continued pursuit of its claims after discovery failed to reveal any facts or evidence that might lend support to these claims.

■ Under Fed.R.Civ.P. 11, each paper presented to a court carries an implied certification that:

to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, of specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed.R.Civ.P. 11(b). More generally, "[i]n this circuit, the test for the imposition of Rule 11 sanctions [is] ... whether the individual's conduct was reasonable under the circumstances." *Union Planters Bank v. L & J Development Co.*, 115 F.3d 378, 384 (6th Cir.1997) (internal quotation marks and citations omitted).[1]

■ The Sixth Circuit has emphasized that the Rule's requirement of reasonableness "is not a one-time obligation." *Runfola*, 88 F.3d at 374 (internal quotation marks and citation omitted). Rather, each party "is impressed with a continuing responsibility to review and reevaluate his pleadings and where appropriate modify them to conform to Rule 11." *Runfola*, 88 F.3d at 374 (internal quotation marks and citation omitted). In particular, "after discovery has been launched, if plaintiffs are still unable to plead a sufficient factual basis for the allegations made against defendants, the spectre of Rule 11 sanctions should guide the actions of plaintiffs' coun-

sel." 88 F.3d at 374 (internal quotation marks and citation omitted). Thus, even if a plaintiff and its counsel have conducted a reasonable pre-filing inquiry, and even if the plaintiff's claims survive an initial motion to dismiss, Rule 11 sanctions may properly be based upon the plaintiff's subsequent "failure to dismiss the case after becoming aware that it lacked merit." *Runfola*, 88 F.3d at 374; *see also* Fed.R.Civ.P. 11 advisory committee's notes to 1993 amendments (observing that the 1993 amendments were intended to "emphasize[ ] the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable").

■ Upon reviewing the record in this case, the Court readily concludes that Plaintiff and its counsel are subject to Rule 11 sanctions for failing to dismiss this case when a lengthy discovery period failed to disclose any support for the antitrust claims asserted in the complaint. The initial discovery cut-off date in this case was May 30, 2003, but at Plaintiff's request, this discovery period was extended on two separate occasions, for a total of four additional months. Even after this extended discovery period closed on September 29, 2003, Plaintiff was given an additional opportunity to seek documents from nonparty Blue Cross and Blue Shield of Michigan ("BCBSM"), a lengthy process that did not conclude until March of 2004.[2] Fi-

---

1. Because the Court finds that Rule 11 provides suitable standards for assessing the conduct of Plaintiff and its counsel, and because Defendants have satisfied the "safe harbor" requirements for the imposition of Rule 11 sanctions by serving their motion 21 days before filing it, *see* Fed.R.Civ.P. 11(c)(1)(A); *see also First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510–11 (6th Cir.2002), the Court need not separately address the availability of sanctions under 28 U.S.C. § 1927. *See Runfola & Associates, Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 375 (6th Cir.1996).

2. Most of this delay was attributable to Plaintiff's repeated failure to serve appropriately tailored document requests upon non-party BCBSM. As observed in an October 7, 2003 order, Plaintiff's initial requests to BCBSM were overly broad, and no apparent effort was made to seek only those materials that could not have been obtained directly from Defendants at less burden and expense. Even upon being granted an opportunity to prepare and serve amended document requests, Plaintiff made only modest changes, leaving the Court with the task of, in essence, redrafting Plaintiff's requests to correspond with the

nally, in its February 17, 2004 order, the Court invited both Plaintiff and Defendants to file supplemental briefs addressing the issues raised in Defendants' pending summary judgment motion in light of the documents produced by BCBSM.

Despite this ample opportunity to identify evidentiary support for its antitrust claims, and despite repeated opportunities to explain how the record might support these claims, Plaintiff manifestly failed to suggest any ground for its continued opposition to Defendants' motion for summary judgment. The various evidentiary deficiencies in Plaintiff's antitrust claims are addressed at length in the Court's October 29, 2004 Opinion and Order granting Defendants' motion, and need not be repeated here. Rather, it suffices for present purposes to address the two broad categories of evidence that would be necessary · to sustain antitrust claims of the type asserted here, and to observe that neither·form of evidence can be found in the record in this case.

First, as observed in the October 29, 2004 Opinion and Order, the SUPPORT network that is under challenge in this case is an example of an "exclusive dealing arrangement," which antitrust law generally does not condemn absent the foreclosure of competition in a "substantial share of the relevant market." (10/29/2004 Opinion and Order at 13–15, 18 (internal quotation marks and citations omitted).) Yet, as the Court previously explained at length, Plaintiff and its expert failed to provide any tenable evidence or theory of "substantial foreclosure" in the relevant market of DME/P & O purchases, leases, and rentals. (*See id.* at 18–31.) Indeed, in apparent recognition of this failure of proof, Plaintiff and its expert sought to define the "relevant market" in a way that

would establish substantial foreclosure as a tautological fact—namely, by claiming that the "relevant market" consists precisely of the SUPPORT and other closed DME/P & O networks from which Plaintiff has been excluded. In short, rather than dismissing its exclusive dealing challenge upon failing to uncover any relevant economic data to support it, Plaintiff advanced a theory which, if accepted, would condemn each and every ·exclusive dealing arrangement as violative of antitrust law.

·Alternatively, Plaintiff could have hoped to show an antitrust violation by identifying characteristics of the closed SUPPORT network that raise particular concerns about anticompetitive effects upon the relevant market for DME/P & O. In a First Circuit decision discussed at length in the October 29, 2004 Opinion and Order, for example, the Court noted that the exclusive dealing arrangement in that case featured a reciprocal agreement between two closed pharmacy networks that each would admit the other's pharmacies into its network. *See Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of Rhode Island,* 373 F.3d 57, 59, 61 (1st Cir.2004). As noted by the First Circuit, this addition of· a horizontal component to the usual vertical restraint associated with an exclusive· dealing arrangement warrants closer scrutiny under antitrust law. *See Stop & Shop Supermarket,* 373 F.3d at 62–64. Nonetheless, in affirming an award· of judgment as a matter of law to the defendants, the First Circuit emphasized that the plaintiff in that case had failed to produce any evidence that this suspect arrangement actually ran afoul of antitrust law by impairing competition in a properly defined market. 373 F.3d at 68–69.

---

claims and allegations actually advanced in the case. Upon performing this task in a February 17, 2004 order, the Court directed

BCBSM to produce any responsive documents, and this non-party discovery effort finally was completed the following month. ·

The same is true here, minus any evidence that would warrant particularly close scrutiny of the SUPPORT network in the first instance. There is no indication, for example, that Plaintiff's exclusion from the SUPPORT network was the result of anything other than ordinary economic and administrative considerations that are inherent in the operation of any closed health care network. Nor, despite Plaintiff's allegations and insinuations, is there any evidence of any horizontal *quid pro quo* arrangement between Defendant ABP Administration and any other network administrator to exclude Plaintiff or any other DME/P & O vendor in a way that might threaten competition in a relevant market. At best, Plaintiff suggests that Defendant Wright & Filippis's purported status as a joint venturer with non-party Binson's Home Health in operating the NNPN network creates a greater potential for anticompetitive conduct.

Yet, this still begs the two legally significant questions: (i) whether Defendants exercised this power, either alone or in concert with others, in a way that unreasonably restrained competition in the relevant DME/P & O market, and (ii) whether Defendants' "greater" power as a result of their roles in both the SUPPORT and NNPN networks operated to foreclose competition in a substantial portion of the relevant market. Plainly, if exclusive dealing arrangements are not *per se* unlawful, a defendant does not necessarily run afoul of antitrust law by its mere involvement in more than one such arrangement. Rather, evidence still is necessary to bridge the gap between the greater *potential* for mischief and actual injury to competition. To hold otherwise, as explained repeatedly in the October 29, 2004 Opinion and Order, would be tantamount to concluding, contrary to settled precedent, that closed networks always must be scrutinized under a full-scale rule-of-reason analysis, even absent any threshold indication of competitive injury in a properly defined market.

In short, the record developed through discovery in this case failed to provide any basis for concluding, or even suspecting, that the SUPPORT network differs in any legally significant respect from the exclusive dealing arrangements that have withstood judicial scrutiny in numerous prior antitrust actions. Rather than recognizing this fact and dismissing the suit, Plaintiff and its counsel hurled groundless accusations, advanced unsupported conspiracy theories, and proposed untenable market definitions that were "reverse engineered" to link the facts to some superficially appealing theory of recovery. This is precisely the sort of "press forward at all costs" litigation strategy that Rule 11 is intended to deter.

■ Accordingly, the Court finds that an award of sanctions is appropriate, in an amount equal to the fees and expenses reasonably incurred by Defendants in defending against Plaintiff's claims after they should have been dismissed. *See* Fed. R.Civ.P. 11(c)(2) (authorizing, among other possible sanctions, "an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation"). Specifically, this award to Defendants shall include: (i) the reasonable attorneys' fees and expert witness expenses incurred in Defendants' preparation and filing of their motion for summary judgment, and (ii) the reasonable attorneys' fees incurred in Defendants' preparation and filing of their motion for Rule 11 sanctions. This award does not encompass, however, the additional fees incurred in Defendants' preparation and filing of their motion for sanctions under 28 U.S.C. § 1927, as Defendants have not explained how this provision gives rise in this case to

an award over and beyond the sanctions available under Rule 11.[3]

This leaves only the question whether, as Defendants contend, an appropriate sanction should also encompass Plaintiff's initial filing of this suit. In support of this request for broader sanctions, Defendants point to a meeting held by counsel in the very early stages of this case to discuss the merits of Plaintiff's claims, as well as a follow-up letter sent by defense counsel to Plaintiff's counsel after this meeting reiterating various purported defects in these claims and warning that sanctions would be sought.[4] At least some of the defects identified in defense counsel's letter, such as the lack of antitrust injury, were cited as grounds for the Court's eventual grant of summary judgment to Defendants.

Although this presents a close question, the Court finds that additional sanctions are not warranted. Just as exclusive dealing arrangements are not *per se* illegal under antitrust law, neither do they altogether escape scrutiny—rather, their legality turns upon the extent to which they impair or foreclose competition in the relevant market. This is a factual issue that can only be resolved after an opportunity for discovery. To be sure, the discovery in this case was not narrowly tailored and optimally focused upon a determination of the nature and characteristics of the relevant market—one need only review the Court's discovery-related orders in this case to see repeated expressions of frustration at the apparent inability of Plaintiff and its counsel to explain how a particular discovery request was reasonably calculated to lead to the discovery of evidence bearing upon a viable theory of antitrust liability. Nonetheless, it was evident throughout the course of discovery that neither side was particularly cooperative and forthcoming, necessitating frequently involvement by this Court and the Magistrate Judge in one discovery skirmish after another. Under these circumstances, the Court declines to lay blame solely at the feet of Plaintiff and its counsel for the parties' failure to promptly conduct the discovery necessary to determine whether Plaintiff's claims had any evidentiary support.

■ Finally, Rule 11 requires a determination whether sanctions should be imposed upon Plaintiff itself, its counsel, or both. *See* Fed.R.Civ.P. 11(c). In this case, the Court finds that Plaintiff's counsel bears the responsibility for the above-cited Rule 11 violations. As explained, the principal violation here was the continued pursuit of this litigation when discovery failed to uncover any evidentiary support for the claims asserted in the complaint. It was unquestionably the duty of Plaintiff's counsel to ascertain and advise his client about the law governing the antitrust claims advanced in this case, *see* Fed.R.Civ.P. 11(b)(2), and to determine and pursue in discovery the factual support that would be necessary to justify the continued pursuit of these claims. When no such support was forthcoming, the case was not dismissed, but Plaintiff's counsel instead filed papers in opposition to Defendants' summary judgment motion that advanced untenable market analyses and rested upon a deeply flawed interpretation of antitrust law, all in an apparent effort to deny the legal significance of the record developed in discovery.

---

**3.** In addition, the fees incurred by Defendants in pursuing this latter motion should have been relatively modest, as it does not appear that Plaintiff ever responded to this motion.

**4.** Defendants also note that the possibility of Rule 11 sanctions was discussed, at least briefly, at the Rule 16 scheduling conference held in this Court's chambers on January 6, 2003.

To be sure, Plaintiff's principal, Harold Greenberg, likely played a role in the strategic decision to carry on rather than abandon the litigation.[5] Yet, this degree of participation falls well short of the misrepresentation of facts, the knowing advancement of false allegations, or other forms of misconduct that have led to the imposition of Rule 11 sanctions on parties in other cases. *Compare, e.g., Union Planters Bank*, 115 F.3d at 384–85. In the end, Plaintiff's counsel bore the responsibility to impress upon his client that the record did not warrant the continued pursuit of this action. Under these circumstances, the Court finds that Rule 11 sanctions should be imposed against counsel alone.

Accordingly, for these reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' December 5, 2003 Motion for Sanctions under Fed. R.Civ.P. 11 is GRANTED IN PART, with sanctions to be awarded in accordance with the rulings in this Opinion and Order. IT IS FURTHER ORDERED that Defendants' December 4, 2003 Motion for Sanctions under 28 U.S.C. § 1927 is DENIED AS MOOT.

In light of these rulings, IT IS FURTHER ORDERED that, within *fourteen (14) days* of the date of this Opinion and Order, Defendants shall file and serve a statement and supporting materials setting forth the precise amounts of attorneys' fees and expenses claimed to be awardable in accordance with the Court's rulings. Upon service of this statement, Plaintiff shall then have *fourteen (14) days* in which to file and serve any challenges to the award sought by Defendants. Defendants shall then, if they wish, file and serve within *seven (7) days* a submission in further justification of the award sought in their initial statement. The Court then will enter an order determining an appropriate monetary sanction under the circumstances.

SO ORDERED.

---

**5.** Indeed, it seems fairly evident from a review of Mr. Greenberg's deposition testimony that he was actively involved in the commencement and management of this litigation. The Court also recognizes that a client's overzealousness can place an attorney in the awkward situation of attempting to resist demands to press forward despite the lack of an evidentiary basis for the party's claims. Nonetheless, it remains the attorney's responsibility to ensure that any papers submitted to the court meet the standards of Rule 11, and to pursue other measures—*e.g.,* withdrawal from the case—if a client's demands are inconsistent with this obligation.